UNITED STATES of America

v.

Ronald E. YATES, Appellant.

No. 74–1187.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 24, 1974.

Decided Nov. 10, 1975.

James P. Gamble (student counsel), with whom Frank F. Flegal, Washington, D. C. (appointed by this Court), Sherman L. Cohn, Washington, D.C., and Allen J. Gross (student counsel), were on the brief for appellant.

Donald E. Robinson, Jr., Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief for appellee.

Before BAZELON, Chief Judge, McGOWAN, Circuit Judge, and MERHIGE,* United States District Judge for the Eastern District of Virginia.

PER CURIAM:

Defendant Ronald Yates appeals from his conviction of first-degree burglary. Finding merit in one of his three claims of error, we reverse his conviction.

## I

In the early morning hours of September 3, 1971, Mrs. Marian Priest was awakened by noises on the first floor of her house at 522 6th Street, S.E. She went downstairs to investigate. By the light of the kitchen and utility rooms, she saw a man 12–14 feet away, in the utility room, backing out the rear door. She watched him for 7–10 seconds while he placed what she described as an ungloved hand on the door knob, opened the door and left; she observed that he was a light complexioned West-Indian looking negro male, with short hair, wearing a light blue sport shirt with a spread collar. After the burglar left, Mrs. Priest immediately discovered that her purse had been upset and that her wallet, containing roughly $135, was missing. She telephoned the police and described the burglar.

Sometime between 2:50 a. m. and 3:00 a police radio call went out for a "Negro male, light complexioned, close cut hair."[1] Officers James and Rawley were on patrol in the area, and proceeded to the scene of the crime. After driving for several blocks without seeing anyone on the streets they observed the defendant and another man, John Jones, walking at a medium pace at 6th and Virginia, S.E. Since the defendant fit the description of the radio run, he and Jones were stopped, frisked, placed in the police car and driven two blocks to Mrs. Priest's home.

When the officers arrived at the home, they found that several detectives had already arrived. Officer James went to the door and spoke to the detectives and Mrs. Priest, who then came to the door. While standing some 12 feet away on a street lit by a bright street lamp, Jones was brought in front of her and she was unable to identify him. Defendant Yates was then brought out and she identified him.[2] Yates and Jones both

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

1. The police officer who testified did not recall whether the radio run included a description of the suspect's shirt. In any event, the shirt that Yates was wearing when arrested was introduced into evidence at the trial; we are informed by the briefs of both sides that it was a light blue shirt but had a button-down rather than a spread collar.

2. Yates did not testify at the hearing on the motion to suppress, but at his trial he claimed that Mrs. Priest initially had not reacted when he was brought in front of her, and that an officer had told Jones and him that they could both go. Yates further testified that Officer

were then placed under arrest and searched, and the area surrounding the house (but not the area where Yates was eventually stopped) was searched; neither the money, the wallet, nor a pair of gloves were found.[3]

At his trial Yates offered an alibi defense. He testified that he and Jones had been together all evening, first with Richard Anderson, then alone, and then again with Anderson. He testified that Anderson left them sometime after 2:00 a. m., that they spent the next fifteen to twenty minutes stealing Volkswagon tires to sell to a friend of Jones, and the next 25 minutes in the home of a friend, Anthony Price, at 722 Sixth Street, S.E., where Jones called his halfway house to report that he would be late, and called his friend to inform him that they had the tires. They were stopped, Yates claimed, while leaving Price's house. Yates was impeached, over defense objection, with a three-year old burglary conviction and a two-year old petty larceny conviction. However, Price and Anderson both corroborated that portion of Yates' testimony that involved them, and Jones claimed his Fifth Amendment privilege against testifying.

In rebuttal, the prosecution called Officer Rawley who testified, again over objection, that while Jones and Yates were in the police car being driven to Mrs. Priest's house, Jones stated that he had been with Yates for only five minutes. Rawley also testified that he had examined police records and found no reports of stolen Volkswagon tires for the night and neighborhood in question.[4]

## II

Two of appellant's claims of error require only brief comment:

First, appellant contends that the District of Columbia Court Reform Act's requirement that evidence of certain types of prior crimes be admitted for impeachment purposes, see 14 D.C.Code § 305, does not apply to trials of solely D.C.Code offenses conducted in the United States District Court during the transition period established by 11 D.C.Code § 502(2). In *United States v. Belt*, 169 U.S.App.D.C. 1, 514 F.2d 837 (1975), this court, sitting en banc, recently rejected this contention. *Belt* is fully dispositive of appellant's claim.

Second, appellant renews here his claim made below in a motion to suppress that the out-of-court identification of him by Mrs. Priest was so suggestive as to violate the due process clause of the Fifth Amendment, and that this identification tainted the in-court identification. Recognizing that this court repeatedly has held that on-the-scene identifications within minutes of the crime do not violate due process,[5] appellant relies on two special factors that he argues render this show-up constitutionally infirm. First, appellant claims the show-up was unduly suggestive because one of the detectives told Mrs. Priest that they thought they had captured the burglar. However, the officer was articulating only that which is "apparent" in any show-up, *Russell v. United States, supra,* at 1284, and we cannot condemn the procedure on this basis. Nor can we find the show-up unnecessarily suggestive, as appellant asserts, merely because Jones and Yates were shown to Mrs. Priest separately. Even appellant concedes that "Jones did not fit the description and could not reasonably have been identified as the guilty party," and thus we do not believe showing the two of them

James then directed that they be held, went inside with Mrs. Priest, and when he returned arrested the two of them. Tr. 4/18 at 103–04. His testimony was contradicted by Mrs. Priest (Tr. 4/17 at 62) and Officer James (Tr. 4/18 at 26–27), and at the motion hearing by Officer Rawley (Mo.Tr. at 25).

3. It was stipulated that Mrs. Priest's house was dusted for fingerprints and that the only identified fingerprints belonged to Mrs. Priest.

4. In the Government's case-in-chief, Officer James had testified that the sergeant went to Anthony Price's home after Yates was arrested and found no one at home.

5. E. g., *Russell v. United States*, 133 U.S.App. D.C. 77, 408 F.2d 1280, *cert. denied*, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969); *Wise v. United States*, 127 U.S.App.D.C. 279, 383 F.2d 206 (1967), *cert. denied*, 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1968).

together would have made the procedure materially less suggestive. Finally, we have considered the "totality of the circumstances," as required by *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). While the case is close, even for a show-up, we do not find the instant one sufficiently conducive to mistaken identification as to deny appellant due process.

### III

Finally, appellant claims that the trial judge erred in admitting Officer Rawley's rebuttal testimony as to Jones' out-of-court statement that he was with Yates for only five minutes. The Government contends the evidence was admissible because Yates was seated next to Jones when the remark was made and tacitly admitted the truth of Jones' statement by failing to deny it.

▇▇▇ "The general principle applicable to this type of evidence is that an accusatory statement and the defendant's failure to deny it are admissible only if the circumstances are such 'as would warrant the inference that he would have naturally have contradicted [it] if he did not assent to [its] truth.' " [6] In this case, when Jones' statement was made, both he and Yates were prime suspects, in custody, in a police car, and in the presence of two policemen. Under such circumstances, we cannot conclude that Yates "would have naturally have contradicted" Jones' statement, especially since Yates had made a "prospective denial" in that he had told the police he had been with Jones all evening. At least in the federal courts, it is well-settled that once a defendant is in custody or under arrest, his silence in the face of inculpatory statements cannot be treated as assent.[7] Indeed any other rule would fly in the face of *Miranda v. Arizona's* teaching that "it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." [8]

▇▇▇ Although not argued by the Government, we have considered whether Jones' statement could be admitted under any of the evolving, amorphous exceptions to the hearsay rule, such as those contained in Rules 803(24) or 804(b)(5) of the new Federal Rules of Evidence. We conclude, however, that the Confrontation Clause of the Sixth Amendment bars any attempt to admit

6. *Kelly v. United States*, 99 U.S.App.D.C. 13, 236 F.2d 746, 749 (1956), *quoting, Sparf v. United States*, 156 U.S. 51, 56, 15 S.Ct. 273, 39 L.Ed. 343 (1895); *see* 4 Wigmore, Evidence (J. Chadbourn ed. 1972) § 1071; C. McCormick, Evidence § 270 (E. Cleary ed. 1972).

7. *See, e. g., United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *United States v. Brierly*, 384 F.2d 992 (3d Cir. 1967); *Ivey v. United States*, 344 F.2d 770 (5th Cir. 1965); *United States v. Lo Biondo*, 135 F.2d 130 (2d Cir. 1943); *Yep v. United States*, 83 F.2d 41 (10th Cir. 1936); *McCarthy v. United States*, 25 F.2d 298 (6th Cir. 1928).

The precise issue has never been decided by this Circuit. In *Kelley v. United States, supra* note 6, we held that when an accused expresses a desire to consult a lawyer before speaking, his subsequent silence may not be interpreted as assent. In *United States v. Harris*, 141 U.S.App.D.C. 253, 437 F.2d 686 (1970), relied upon by the Government, we decided only that it was not plain error to receive into evidence a hearsay statement made to a detective in the presence of an accused. *See also United States v. Bolden*, 169 U.S. App.D.C. 60, 514 F.2d 1301, 1311 (1975) (finds tacit admissions where remarks made "in casual conversation, out of the presence of police").

8. 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966); *cf. Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *United States v. Anderson*, 162 U.S. App.D.C. 305, 498 F.2d 1038, 1043–44 (1974), aff'd, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) (defendant's silence cannot be used as a prior inconsistent statement to impeach an alibi defense).

In the instant case, the defendant was in custody but was not being interrogated. But the Fifth Amendment's protection does not vanish simply because a question is posed or statement made by a third party in the presence of police rather than by the police themselves.

this evidence.[9] *Dutton v. Evans,* 400 U.S. 74, 88–89 & n. 19, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), teaches that the out-of-court statements of a person not called as a witness and never previously made available for cross-examination are admissible at least when three conditions are satisfied: (1) there are "indicia of reliability" surrounding the evidence; (2) the evidence is "peripheral" rather than "crucial" or "devastating"; and (3) the witness is equally available to the prosecution and the defense. Admittedly, the precise contours of these three requirements are not free from doubt, nor is it certain whether all three must be satisfied in every case.[10] But in this case, none of the three conditions are met. Although Jones' statement concerned the immediate past and there is little likelihood of a perception or memory problem, the declaration was knowingly spoken to police officers, and it contradicted Yates' claim that he and Jones had been out stealing tires together. Clearly, grave doubts exist as to the sincerity of the self-serving statement. The evidence represented half of the Government's rebuttal case, and thus while it was not essential for the conviction, it was far from "peripheral." *See* 173 U.S.App. D.C., at ——, 524 F.2d at 1286, *in-*

*fra.* Finally, the defendant attempted to secure Jones' testimony and was unable to do so when Jones claimed his Fifth Amendment privilege; the Government, on the other hand, could have overcome that claim at little cost to itself by covering Jones with use immunity. In these circumstances, we hold that the defendant's right to confront his accusers was violated when Jones' extrajudicial statement was received in evidence.

■ Finally, we have considered and rejected the possibility of treating the error as harmless. We simply are not persuaded beyond a reasonable doubt that the error did not contribute to the verdict obtained. *Chapman v. California, supra.* This is not a case in which there was "overwhelming evidence" of guilt, *Milton v. Wainwright,* 407 U.S. 371, 373, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); the Government's case rested entirely on an identification based on 7–10 seconds of observation and on the defendant's presence near the scene of the crime shortly thereafter. Defendant's alibi explained his presence there, and also explained several factors that mitigated against conviction: the medium pace at which Yates was walking when

**9.** We reach the Constitutional question because we are ultimately required to decide whether the error in admitting the evidence was harmless, *see,* 173 U.S.App.D.C. p. ——, 524 F.2d p. 1286, *infra,* and the test for harmlessness varies depending on whether the error was constitutional or nonconstitutional. *Compare Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), *with Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Our conclusion on the Constitutional question forecloses inquiry into the applicability of the new Federal Rules.

**10.** It is beyond dispute that indicia of reliability must exist before extra-judicial statements of a person not present as a witness can be admitted into evidence. *See Dutton v. Evans, supra,* at 89, 91 S.Ct. at 220 ("[T]he mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process . . . .."). On several occasions, however, the Supreme Court has found constitutional violations in the use of reliable extra-judicial statements when the evidence was crucial and the prosecution had not

made good faith efforts to produce the declarant as a witness. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *see also Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972) (no violation found where good faith efforts had been made). The extensiveness of the efforts required may vary depending on the importance of the hearsay evidence and the strength of the indicia of reliability. *Compare Barber v. Page, supra, with Mancusi v. Stubbs, supra.* Indeed in certain cases, the hearsay evidence may be so much more reliable than any in-court testimony would be that no effort to produce the declarant will be required. *See Dutton v. Evans, supra,* 400 U.S. at 95–96, 91 S.Ct. 210 (Harlan, J., concurring).

Whether good faith efforts to produce witnesses uniquely available to the prosecution will be required when their out-of-court statements are reliable and "peripheral" remains uncertain.

stopped; the failure to find the money or wallet despite the quick arrest; and the failure to find the gloves that, based on the absence of fingerprints, we may assume the burglar wore. Defendant's alibi testimony was corroborated by two other witnesses. Moreover, the alibi carried indicia of reliability because it contained an admission of guilt to another, albeit less serious crime. The hearsay evidence came immediately after the defense rested, and, as noted, constituted half of the rebuttal case. If credited, the hearsay would have demolished the entire defense. Without the hearsay, the alibi witnesses' testimony might well have left the jury with a reasonable doubt as to whether Mrs. Priest had correctly identified Yates; consequently, we cannot conclude beyond a reasonable doubt that the error was harmless. The conviction is therefore,

*Reversed.*

Before BAZELON, Chief Judge, FAHY, Senior Circuit Judge, and McGOWAN, Circuit Judge.