**Seymour STYERS, Petitioner,**

v.

**Harold SMITH, Superintendent, Attica Correctional Facility, Respondent.**

**Civ. No. 76–576.**

United States District Court,
W. D. New York.

Oct. 25, 1980.

Rolf Nils Olsen, Jr., Buffalo, N. Y., for petitioner.

Robert Abrams, Atty. Gen. of the State of New York (James L. Kennedy, Asst. Atty. Gen., of counsel), Buffalo, N. Y., for respondent.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

This is a proceeding for a writ of habeas corpus brought by petitioner, an inmate at the Attica (N.Y.) Correctional Facility, against respondent, the Superintendent of said facility.

Petitioner was arrested in Buffalo, N.Y. December 28, 1973 and charged with two counts each of first degree robbery, second degree robbery, and possession of a dangerous weapon. The charges arose out of the robbery of Faso's Liquor Store ("the store") located at 207 Niagara Street in Buffalo by two armed men December 27, 1973. At a jury trial commencing June 24, 1974, petitioner was convicted of two counts of first degree robbery and possession of a dangerous weapon. Petitioner is currently serving indefinite terms of imprisonment not to exceed twenty-five years on the robbery charges and definite terms of imprisonment of one year on the weapons charges.

In this proceeding, petitioner claims that his conviction was unconstitutionally obtained in that: (1) his Sixth Amendment and Fourteenth Amendment rights were violated by hearsay testimony at trial regarding conversations between police and an unidentified informant; (2) identification testimony obtained in violation of the Fourth and Fourteenth Amendments was introduced at trial; and (3) testimony concerning identifications of petitioner predicated upon impermissibly suggestive procedures was admitted by the trial court in violation of the Fourteenth Amendment. I have concluded that petitioner's Sixth Amendment claim warrants the relief requested herein.

At about three o'clock in the afternoon of December 27, 1973, two men entered the store and inquired about various brands of whiskey. Stephen Faso, the store proprietor, and Paul Dodge, a friend of Faso's, were in the store at the time. The two men carried on brief conversations with both Dodge and Faso and then left the store after about five minutes, saying they had to call their sister about the purchase. Dodge watched the two men leave the store and saw them meet a third person on the corner. Shortly thereafter, the two men re-entered the store. One man, later alleged to be petitioner, approached Dodge, held a knife to his throat and took twenty-five dollars from him. The second man pulled a knife on Faso and took seventy-five dollars from the cash register. The robbery lasted about one to three minutes.

Faso called the police immediately after the hold-up. Dodge and Faso described the robbers as follows: "a colored male twenty-five to thirty years old, five foot eight inches tall; a colored male about six foot,

between twenty–five to thirty years old, wearing a black hat."

The following day, Buffalo Police Officer Angelo Cannizzaro received a phone call from an informant saying that three persons had been involved in the robbery. Subsequently, Cannizzaro brought Dodge to the police station to examine photographs. Dodge identified a photograph of Anthony Burt as one of the robbers. Dodge was not shown photographs of either Vincent Burt or petitioner at this time. While Dodge was still at the police station, the informant called Cannizzaro a second time and said that two of the robbery participants were Vincent and Anthony Burt. The informant did not identify the third robber but said all three could be found at 47 Whitney Place in Buffalo at that moment. After receipt of the call, Cannizzaro informed Dodge that he was leaving to arrest the three robbers. Although Dodge stated to Cannizzaro that there were only two robbers, Cannizzaro and Detective DiPasquale went to 47 Whitney Place and arrested the two Burt brothers and petitioner.

Cannizzaro returned to the police station with the three suspects who were immediately exhibited to Dodge. Dodge identified Vincent Burt and petitioner as the men who robbed the liquor store. Vincent Burt and petitioner were booked and photographed; the photographs were Polaroid color prints. Dodge made a statement at that time that Vincent Burt had been the robber who held a knife to his throat.

DiPasquale and Dodge then went to the liquor store to have Faso examine the photographs. When they entered the store, Dodge told Faso that he had seen the two hold–up men at the police station. Dodge went to the rear of the store as DiPasquale showed Faso an array of photos. The array included the two Polaroid pictures of Vincent Burt and petitioner taken at the time of their arrests and several black and white mug shots of other persons. DiPasquale set all of the photos in front of Faso and asked "Are these the two fellows?", but did not specifically point out any two pictures. Faso selected the pictures of Vincent Burt and petitioner as those of the robbery participants.

Anthony Burt was not charged with any crime in the robbery of the liquor store. Vincent Burt pled guilty to Third Degree Robbery as a result of the hold–up. Petitioner's essential position at trial was that he had been misidentified and that Anthony Burt had been the second robber.

A pretrial hearing (hereinafter "the Wade hearing") was held June 13, 1974, before an Erie County Supreme Court Justice in order to determine the admissibility of testimony regarding identifications of petitioner by Dodge and Faso. Counsel for petitioner urged that such testimony should be excluded because the identifications were made under suggestive circumstances. Counsel also argued that the prosecution should be forced to disclose the identity of the informant whose calls had led to the arrest of petitioner. The judge ruled that the identification testimony by Dodge and Faso would be admissible and that disclosure of the informant's identity was unnecessary. Counsel did not raise the issue whether petitioner's arrest was without probable cause and whether Dodge's and Faso's identification testimony therefore should be excluded as fruit of the poisonous tree.

At trial, Dodge and Faso identified petitioner as one of the robbery participants. Dodge also gave direct examination testimony concerning his identification of petitioner at the police station. Both witnesses were cross–examined extensively about their out–of–court identifications of petitioner and their testimony given at the Wade hearing. The identification testimony given by Dodge and Faso is somewhat confused. Both men testified that they knew the Burt brothers and petitioner by sight and that the Burts and petitioner had been customers in the store.[1] Yet, in ini-

---

1. Faso testified that he had sold liquor to Vincent Burt forty to fifty times and that petitioner usually came to the store with Burt. Trial Transcript ("Tr. Tr.") at 155–56. Dodge testified that he knew the Burts from seeing them in the neighborhood four or five times a day

tially describing the robbers to the police, Dodge and Faso failed to indicate that they were familiar with the robbers.[2] There is confusion regarding the basis for Dodge's identification of petitioner. Dodge initially relied upon a scar on petitioner's chin but also seemed to say that his recognition of petitioner was based on petitioner's sideburns and wide nose, and that Vincent Burt had a scar on his chin.[3] Dodge and Faso both identified petitioner as having been the robber who held a knife to Dodge's throat, but in a written statement made immediately after the police station identification, Dodge had said that Vincent Burt was that robber.[4] The identification testimony given by Dodge and Faso is further confused by Dodge's photographic identification of Anthony Burt prior to the show-up at the police station,[5] Dodge's initial in–court identification of Anthony Burt at the *Wade* hearing,[6] and Faso's initial selection of a photograph of Anthony Burt at the *Wade* hearing.[7]

At trial, Cannizzaro testified as to the substance of his telephone conversations with the unidentified informant.[8] On cross–examination, Cannizzaro refused to disclose the identity of the informant and the court declined to order him to do so.

On appeal, petitioner argued that the refusal of the trial court to order disclosure of the identity of the informant violated petitioner's rights to confrontation and due process. Petitioner also argued that the court should have suppressed the identification testimony because such testimony was the result of suggestive police procedures. For the first time, petitioner challenged the admissibility of the identification testimony on the grounds that it was the result of an arrest made without probable cause. The Appellate Division of the Supreme Court, Fourth Department, affirmed petitioner's conviction without opinion. *People v. Styers*, 49 A.D.2d 699, 373 N.Y.S.2d 1017 (4th Dep't 1975). Petitioner's application for leave to appeal to the Court of Appeals was denied September 25, 1975.

I. *Identity of the Informant*

 The right of a defendant in a criminal case to confront the witnesses against him is a fundamental right applicable to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). This right may be violated by a witness's testimony regarding out--of–court state-

and that they were usually in the company of petitioner. Tr. Tr. at 38, 60, 70--71; *Wade* Tr. at 80–82. Dodge even testified that he knew the Burts' last name and approximate address. Tr. Tr. 70–71; *Wade* Tr. 80–82.

2. Dodge testified at the *Wade* hearing that he had not told the police that he knew the robbers. *Wade* Tr. at 92. At trial, Dodge said that he had done so. Tr. Tr. at 61-69. However, DiPasquale testified at the *Wade* hearing that Dodge's initial description of the robbers did not mention any familiarity with them. *Wade* Tr. at 47. At trial, Faso could not remember whether he had told the police he knew the robbers, but said if he had done so his statement would have indicated that. Tr. Tr. at 170.

3. *Wade* Tr. at 57, 77–79, 101; Tr. Tr. at 37, 82–87, 107–108.

4. *Wade* Tr. at 86–90; Tr. Tr. at 109-112. Apparently, Dodge did not read his written statement before signing it. *Id.*

5. *Wade* Tr. at 7–8; Tr. Tr. at 97-98, 209.

6. *Wade* Tr. at 62–63; Tr. Tr. at 94--95.

7. *Wade* Tr. at 106 107.

8. Cannizzaro's testimony was as follows:
 "MR. DORN [Asst. Dist. Atty.]: What did he do in the course of his investigation after?
 "THE COURT: The officer?
 "MR. DORN: Yes.
 "THE WITNESS: While Mr. Dodge was at the station house I received a phone call from an informant telling me that the suspects in the hold up were at 47 Whitney Place.
 * * * * * *
 "Q: Did he mention how many people were involved?
 "A: Three.
 "Q: Did he mention any names at all?
 "A: Burt brothers.
 "Q: Did he ever give you the name of the other individual?
 "A: No, he didn't.
 * * * * * *
 "Q: What did you observe when you went over to 47 Whitney Place?
 "A: I observed the two Burt brothers and Seymour Styers standing out in front."

ments made by other persons not available for cross–examination. *United States v. Oates*, 560 F.2d 45, 80–81 (2d Cir. 1977); *Stewart v. Cowan*, 528 F.2d 79 (6th Cir. 1976).

Petitioner contends that, because he was arrested by the police at 47 Whitney Place, Cannizzaro's testimony that the informant said the three hold–up men were at 47 Whitney Place rendered the informant an additional "witness" against him. Petitioner suggests that the trial court's refusal to permit identification and examination of the informant deprived petitioner of his right to confront this additional witness.[9] Respondent argues that the state's case against petitioner was not supported by the information provided by the informant but solely by the identification testimony of Dodge and Faso. Respondent also contends that the trial court's refusal to require identification of the informant is supported by *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

Contrary to respondent's position in this case, it appears that the informant's statements as related by Cannizzaro did constitute circumstantial evidence of petitioner's guilt. The informant's statement that the three hold–up men [10] could be found at a particular address leads to a direct inference that the particular men found at that address shortly after the statement was made were in fact the robbers. The likelihood that the jury in this case inferred from the informant's statement that petitioner participated in the robbery is increased by several factors. First, the informant stated that the Burt brothers were involved in the robbery. Any third person found with the Burts at the address specified by the informant would have been im-

plicated by the informant's statement. Second, the informant stated that there had been three participants in the robbery, and Dodge testified that the two hold–up men met a third person on the corner just prior to the robbery. In light of these statements concerning a third robbery "participant" and Dodge's and Faso's further testimony that petitioner was often in the company of the two Burts, the informant's statement that the two Burts committed the robbery could have led the jury to believe that petitioner was the third robbery participant. Finally, the jury knew that Vincent Burt had pled guilty to Third Degree Robbery in the case. The knowledge that at least one of the Burts participated in the robbery, as the informant alleged, could have led the jury to believe the informant was reliable. In view of these factors, Cannizzaro's testimony regarding the informant's statements raised such a direct inference of petitioner's guilt that such testimony constituted substantive evidence against petitioner.

■ My conclusion that Cannizzaro's testimony regarding the informant's statements constituted substantive evidence of petitioner's guilt does not automatically mean that petitioner's right to confrontation was violated, however. *California v. Green*, 399 U.S. 149, 156, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970). The United States Supreme Court has indicated that the right to confrontation and the rule against hearsay, with all its generally–recognized exceptions, are not co–extensive. *Id.*, at 155–56, 90 S.Ct., at 1933–1934. Any analysis of an alleged violation of the right to confrontation by introduction of hearsay testimony must proceed on a case–by–case basis. The

---

**9.** Petitioner did not object at trial or on appeal to the admission of Cannizzaro's hearsay testimony. Rather, petitioner merely argued that the trial court should have required disclosure of the informant's identity. Thus, in this proceeding, I am not concerned with the issue whether Cannizzaro's testimony was properly admitted as an initial matter. Instead, I must address the question whether the Sixth Amendment required disclosure of the informant's identity after Cannizzaro had given hearsay

testimony regarding statements made by the informant.

**10.** Cannizzaro testified that the informant told him the "suspects" were at 47 Whitney Place. I do not think Cannizzaro's use of the term "suspects" rather than "robbers" or "hold–up men" is significant in view of the fact that Cannizzaro testified immediately afterward that the informant said three men, including the Burt brothers, were involved in the robbery.

factors relevant in such an analysis include the reliability of the out–of–court statement, the significance of the out–of–court statement in light of all the other evidence in the case, and the conduct of the prosecution. *Dutton v. Evans*, 400 U.S. 74, 87–89, 91 S.Ct. 210, 219–220, 27 L.Ed.2d 213 (1970). The significance of these factors in any given case cannot be precisely predicted or defined. *United States v. Yates*, 524 F.2d 1282, 1286 (D.C.Cir.1975). It appears, however, that a defendant's right to confront the witnesses against him is violated where extrajudicial statements of a person not present as a witness are admitted into evidence and those statements do not bear any significant indicia of reliability. *United States v. West*, 574 F.2d 1131, 1138 (4th Cir. 1978); *United States v. Yates, supra*, at 1286, n.10.[11] This is such a case.

■ The record is devoid of any indication that the informant's statements to Cannizzaro were inherently reliable. There was no showing that the informant possessed personal knowledge regarding the robbery. *See, Dutton v. Evans, supra*, 400 U.S. at 88–89, 91 S.Ct., at 219–220. Nor is there any reason to suppose that the informant did not misrepresent the facts concerning the robbery. *Id.* The informant's statement was not made under circumstances typically deemed to render out–of–court statements reliable. *See, e. g., Dutton v. Evans, supra*, at 88, 91 S.Ct., at 219 (statement was against declarant's penal interest); *United States v. Lee*, 589 F.2d 980, 988 (9th Cir.), *cert. denied* 444 U.S. 969, 100 S.Ct. 460, 62 L.Ed.2d 382 (1979) (statement was made under oath); *United States v. White*, 553 F.2d 310, 314 (2d Cir.), *cert. denied* 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977) (statement was against declarant's penal interest); *United States v. Wigerman*, 549 F.2d 1192, 1194, n.7 (5th Cir. 1977) (statement constituted declarant's business records). Moreover, unlike the out–of–court statement held admissible in

*Dutton v. Evans, supra*, 400 U.S. at 88, 91 S.Ct., at 219, the informant's statement contained express assertions of past fact—namely, that the Burt brothers and a third person had committed the robbery. In these circumstances, I cannot conclude that the jury had a "satisfactory basis" for evaluating the truth of the informant's statements. *California v. Green, supra*, 399 U.S., at 161, 90 S.Ct., at 1936.

The trial court's refusal to require identification of the informant rendered the informant unavailable for examination with respect to the statements made by the informant to Cannizzaro. Nevertheless, the respondent argues that under the flexible rule adopted in *Roviaro v. United States, supra*, disclosure of the informant's identity was not required. In *Roviaro*, the Court concluded that whether disclosure of an informant's identity is required depends "on the particular circumstances of each case * * *." *Roviaro v. United States, supra*, 353 U.S., at 62, 77 S.Ct., at 629. I consider the governmental privilege to withhold the identity of informants to be inapplicable to the present case. *Roviaro* was concerned not so much with the Sixth Amendment's right to confrontation as with the defendant's ability to gather information and thereby prepare an effective defense. *See, McAllister v. Brown*, 555 F.2d 1277, 1278–9, n.1 (5th Cir. 1977). In the instant case, however, the government solicited hearsay testimony concerning statements made by the informant which tended to implicate petitioner in the robbery. Recognition of the government's privilege to withhold identification of the informant would permit the government to introduce evidence regarding inculpatory statements made by the informant and yet place the informant beyond examination with respect to those statements. I do not hold that the informant's identity should have been disclosed as an initial matter, but only that, where

11. The United States Court of Appeals for the Second Circuit has declined to follow the court's holding in *United States v. Yates, supra*, but apparently has not questioned the court's dictum regarding the inadmissibility of hearsay that bears no indicia of reliability. *United States v. Medico*, 557 F.2d 309, 316 n.6, *cert. denied*, 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 480 (1977).

the government has affirmatively used hearsay testimony concerning an informant's out-of-court statements to implicate a defendant and those statements bear no significant indicia of reliability, the government's privilege to refuse to identify the informant "must give way." *Roviaro v. United States, supra*, 353 U.S., at 61, 77 S.Ct., at 628.

■ Finally, the trial court's failure to order the identification of the informant cannot be deemed harmless error. Dodge's and Faso's testimony identifying petitioner as one of the hold-up men contained several inconsistencies that, in the absence of evidence regarding the informant's statements, might well have raised a reasonable doubt as to petitioner's guilt. Furthermore, petitioner's defense at trial was essentially that Anthony Burt had been the second robber in the liquor store. In view of the informant's statements, however, the jury might have been led to believe that, even if Anthony Burt had been in the liquor store, petitioner was the third robbery "participant" on the street corner and so should be convicted. Identification of the informant could have enabled petitioner to examine the informant regarding the informant's statements to Cannizzaro. Such examination would have revealed whether the informant did believe that petitioner actually participated in the robbery and, if so, the basis for that belief. Therefore, I cannot conclude beyond a reasonable doubt that the trial court's failure to require identification of the informant did not contribute to the verdict obtained against petitioner. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

## II. *Circumstances of Petitioner's Arrest*

■ Petitioner's next contention is that his arrest was effected without probable cause in violation of the Fourth Amendment and that testimony regarding the out-of-court and in-court identifications of petitioner by Dodge and Faso therefore should have been excluded from evidence at trial. Respondent does not dispute that petitioner's arrest violated the Fourth Amendment, but argues that (1) *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), bars consideration of petitioner's Fourth Amendment claim in this proceeding; (2) petitioner waived his Fourth Amendment objection to the identification testimony by failing to raise such objection at. trial; and (3) petitioner's Fourth Amendment argument is without merit because the connection between the improper arrest and identifications of petitioner is so attenuated as to dissipate any taint arising out of the arrest. For the reasons set out below, I conclude that I am barred from addressing petitioner's Fourth Amendment claim by *Stone v. Powell, supra*.

In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial." *Stone v. Powell, supra*, at 482, 96 S.Ct., at 3046. Thus, the issue before me is whether petitioner was provided an opportunity for full and fair litigation of such claim.

Petitioner argues that, under the criteria established in *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), he was not given such an opportunity. *Townsend* lists six circumstances under which a federal court must grant an evidentiary hearing to a habeas corpus applicant.[12] The

---

12. The Court stated that a hearing must be granted:

"If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." *Townsend v. Sain, supra*, at 313, 83 S.Ct., at 757.

answer to petitioner's *Townsend* argument is provided in *Gates v. Henderson,* 568 F.2d 830 (2d Cir. 1977) (en banc), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978).

*Gates* was a proceeding for a writ of habeas corpus in which the petitioner alleged that his conviction for murder had been obtained in violation of the Fourth Amendment. Gates had been stopped by a police officer for a traffic infraction and, when the officer learned of Gates's identity, the officer arrested him for assault. Gates was then taken to the police station, fingerprinted and palmprinted. At his trial, the prosecution offered evidence that his fingerprints and palmprints were found at the crime scene. Gates objected to the introduction of such evidence on Fifth Amendment and Sixth Amendment grounds, but not on the ground that his palmprints and fingerprints had been obtained as a result of an illegal arrest. The Appellate Division, Second Department, affirmed his conviction. Gates raised his Fourth Amendment argument for the first time on appeal to the New York Court of Appeals which also affirmed his conviction. The federal district court dismissed his petition for a writ of habeas corpus because he had not properly raised his Fourth Amendment claim in state court. Gates appealed and the Second Circuit Court of Appeals initially held that Gates was not barred from asserting his Fourth Amendment claim in a habeas corpus proceeding. On rehearing en banc, it was held, in a plurality opinion joined in by seven judges, that because Gates was given a full and fair opportunity to litigate his claim in the New York courts, federal habeas corpus relief was unavailable.

The initial holding of the federal appellate court in *Gates* was based on its conclusion that the state court's failure to comply with *Townsend v. Sain, supra,* deprived Gates of a full and fair opportunity to litigate his Fourth Amendment claim. The en banc plurality rejected this conclusion, stating that *Townsend* "cannot be reasonably interpreted to require a federal court to conduct a hearing on an issue where the state prisoner, having an opportunity to do so, never tendered the question to the state court." *Gates v. Henderson, supra,* at 838. The plurality stated further that *Stone v. Powell, supra,* requires only the "*opportunity* for full and fair litigation of the Fourth Amendment claim * * *." *Id.,* at 839. Judge Oakes, with whom Judges Smith and Feinberg joined, concurred in the result of the en banc hearing on the grounds that Gates had failed to adhere to New York's contemporaneous objection rule, N.Y.Code Crim.Proc. §§ 813-c, 813-d (predecessor to N.Y.Crim.Proc. Law § 710.40). *Id.,* at 842–43. Judge Oakes rejected the stringent "opportunity" test established by the plurality, however. *Id.,* at 843–44.

I am compelled to adhere to the plurality holding in *Gates.* Petitioner did not request suppression of Dodge's and Faso's identification testimony on Fourth Amendment grounds at either the *Wade* hearing or upon trial. Although petitioner did seek disclosure of the informant's identity, this request was made to determine whether the informant had other information that might be relevant to petitioner's defense, not to determine whether there was probable cause for petitioner's arrest.[13] Because petitioner did not raise his Fourth Amendment claim at the trial level, he cannot claim that he was not given a full and fair opportunity to litigate that claim. There-

---

Petitioner argues that the pre-trial *Wade* hearing was inadequate to determine his Fourth Amendment claim because it failed to comport with requirements numbered (1), (2) and (5).

**13.** At the *Wade* hearing, petitioner's counsel stated:

" * * * The information obtained from that particular informant was that the perpe-

trators of this particular crime were the Burt brothers and I feel that in all fairness and to get my client due process here, I should ask the Court to direct that we be supplied with the name of that informer *so that we can find out what basis there was for the Burt brothers being identified as participants in this crime instead of my client.*" (emphasis added) *Wade* Tr. at 145.

fore, *Stone v. Powell, supra*, bars my consideration of petitioner's Fourth Amendment argument.

## III. Identification Testimony

■ Petitioner claims that his in-court identifications by Dodge and Faso denied him due process of law because the identifications were tainted by suggestive out-of-court identifications. A two-pronged test must be applied to determine whether the identification testimony was properly admitted at trial. I must determine whether the out-of-court identifications were made under suggestive circumstances and, if so, whether the in-court identifications were rendered so unreliable by the suggestive circumstances that the in-court identifications should have been excluded from evidence. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 198–99, 93 S.Ct. 375, 381–382, 34 L.Ed.2d 401 (1972); *Gonzalez v. Hammock*, 639 F.2d 844 at 847 (2d Cir., 1980); *United States v. Leonardi*, 623 F.2d 746, 754 (2d Cir. 1980). This two-part test must be separately applied to both Dodge's and Faso's identifications of petitioner.

### A. Identification of Petitioner by Dodge

Petitioner contends that Cannizzaro's statement to Dodge that he was leaving to arrest the robbery suspects rendered Dodge's identification of petitioner suggestive.

■ Ordinarily, a statement by the police to a witness that a suspect has been apprehended is not, in and of itself, so suggestive to warrant exclusion of identification testimony by the witness. *United States v. Danzey*, 594 F.2d 905, 915–16 (2d Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979). However, the identification must be judged in light of the "totality of the circumstances." *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). In this case, Cannizzaro told Dodge that he was going to arrest the three suspects and, immediately upon his return to the station house, exhibited the suspects to Dodge. Dodge must have known that these three persons were the suspects who had been arrested by Cannizzaro and that Cannizzaro had some reason to believe that they participated in the robbery. The fact that Dodge identified Vincent Burt and petitioner from a group of three suspects does not mitigate the suggestiveness of the identification procedure; a larger number of participants in a neutral line-up would have been necessary to remove the effects of Cannizzaro's remark. I therefore conclude that Dodge's identification was given under suggestive circumstances.

■ Under the second prong of the applicable test, I must determine whether Dodge's identification of petitioner possessed indicia of reliability sufficient to remove any taint caused by the suggestive circumstances in which it was made. The factors to be considered in gauging the reliability of the identification are:

> "The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers, supra*, 409 U.S., at 199–200, 93 S.Ct., at 382.

*See, Manson v. Brathwaite, supra*, 432 U.S., at 114 16, 97 S.Ct., at 2253–2254; *Gonzalez v. Hammock, supra*, at 847–848.

(1) *Opportunity to view the criminal.* Dodge had two opportunities to view the two hold up men. The robbers entered the store for a period of about five minutes and then returned for one to three minutes to commit the crime. The robbery took place in mid-afternoon in well-lit surroundings. In these circumstances, Dodge certainly had a sufficient "opportunity to fix an image" of the robber's face. *Gonzalez v. Hammock, supra*, at 847. *See, Mysholowsky v. People of State of N. Y.*, 535 F.2d 194, 197 (2d Cir. 1976).

(2) *Degree of attention.* Dodge watched the hold–up men and apparently spoke to them briefly while they were in the store the first time.[14] During the robbery, Dodge was fearful and upset, but was also looking at the robber's face.[15] Petitioner suggests that because Dodge is not a trained observer, such as a police officer, his identification was unreliable. However, a crime victim faced with deadly force would undoubtedly pay strict attention to the person threatening to use that force. *Gonzalez v. Hammock, supra,* at 847, slip op. at 5127.

(3) *Accuracy of prior descriptions.* Dodge gave only a very general initial description of the robber later alleged to be petitioner. This robber was said to be a colored male about six feet tall, between twenty–five and thirty years old. At the time of his arrest, petitioner was seventeen years old. He is a colored male about six feet tall. Because Dodge's initial description was so vague, it does little to demonstrate the reliability of Dodge's identification of petitioner. However, the fact that petitioner was seventeen at the time, and not twenty–five to thirty as Dodge initially said, does not necessarily mean that Dodge's identification of petitioner was unreliable. *See, Mysholowsky v. People of State of N.Y., supra,* at 198.

(4) *Level of certainty.* Dodge was quite certain of his out–of–court identification of petitioner as one of the hold up men.[16]

(5) *Length of time.* Dodge's identification of petitioner occurred on the day after the crime. It is likely that his image of the robber was very fresh at the time his out of–court identification was made.

On balance, these considerations show that Dodge's identification of petitioner at the police station was sufficiently reliable to permit Dodge's identification testimony at trial. Discrepancies in Dodge's testimo-

ny affect the credibility of his testimony but do not render his identifications so unreliable that petitioner was deprived of due process of law by the admission thereof. *United States v. Leonardi, supra,* at 755; *United States v. Moskowitz,* 581 F.2d 14, 20 (2d Cir.), *cert. denied,* 439 U.S. 871, 99 S.Ct. 204, 58 L.Ed.2d 184 (1978); *United States v. Bubar,* 567 F.2d 192, 198 (2d Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977).

B. Identification of Petitioner by Faso

■ Petitioner argues that Faso's photographic identification was made under suggestive circumstances because Dodge told Faso prior to the identification that he, Dodge, had seen the robbers at the police station and because DiPasquale, upon showing the photo array to Faso, asked Faso "Are these the two?" Petitioner also argues that the photo array was suggestive because the pictures of petitioner and Vincent Burt were color Polaroid prints and the other photos were black and white mug shots.

Viewed in the totality of circumstances, the identification procedure was not suggestive. Dodge did not tell Faso who the robbers were or give any indication which pictures Faso should select. Similarly, DiPasquale's question expressed an interest in two of the pictures, but DiPasquale did not indicate which two they were. Thus, even though Faso probably knew that the array included photographs of the robbers, he was nevertheless required to identify petitioner's picture from an array of several others.[17] *See, United States v. Leonardi, supra,* at 754. Faso does not seem to have attached any particular significance to the distinction between the color prints and the

---

14. *Wade* Tr. at 83; Tr. Tr. at 119–20.

15. Tr. Tr. at 121–22.

16. At the *Wade* hearing, Dodge testified that there was no question in his mind regarding his identification of Vincent Burt and petitioner. *Wade* Tr. at 100–101. According to Cannizzaro's *Wade* hearing testimony, Dodge identified Vincent Burt and petitioner with no hesitancy. *Wade* Tr. at 12, 19.

17. DiPasquale testified at the *Wade* hearing that he exhibited seven photos to Faso. *Wade* Tr. at 42 43. Faso testified that he viewed six or seven photos. *Wade* Tr. at 126, 135.

black and white prints.[18] The difference between the photographs of petitioner and Vincent Burt and the other photographs in the array did not make the array suggestive. *United States v. Bubar, supra*, at 198–9.

Even if Faso's photographic identification of petitioner was suggestive, the identification was sufficiently reliable to permit Faso to make an in–court identification of petitioner. Faso observed the hold–up men during both of their entries into the store and his initial description of petitioner was more accurate than Dodge's.[19] Faso's identification of petitioner was also made on the day after the hold–up and without hesitancy.

I conclude that petitioner was not deprived of due process of law by Dodge's and Faso's testimony identifying petitioner as one of the robbery participants.

Based on the foregoing discussion, it is hereby ORDERED that a writ of. habeas corpus shall issue in favor of the petitioner, Seymour Styers, unless an affidavit of intent to re–try the petitioner is filed with ·this court within thirty days of the entry of this Memorandum and Order.

---

**18.** *Wade* Tr. at 127–9.

**19.** Faso initially said petitioner was between twenty and twenty–five years old. Tr. Tr. at 155.