Seymour STYERS, Petitioner-Appellee,

v.

Harold J. SMITH, Superintendent, Attica Correctional Facility, Respondent-Appellant.

No. 924, Docket 80–2335.

United States Court of Appeals, Second Circuit.

Argued March 11, 1981.

Decided Sept. 10, 1981.

Rolf Nils Olsen, Jr., Buffalo, N.Y. (Michael Ciminelli, Andrew Cataldo, Student Attys., Buffalo, N. Y. of counsel), for petitioner-appellee.

Wayne L. Benjamin, Asst. Atty. Gen., Albany, N. Y. (Robert Abrams, Atty. Gen., of the State of N. Y., William J. Kogan, Asst. Sol. Gen., Albany, N. Y. of counsel), for respondent-appellant.

Before FRIENDLY, MANSFIELD and KEARSE, Circuit Judges.

MANSFIELD, Circuit Judge:

Harold Smith, the Superintendent of Attica, appeals an order issued on October 25, 1980, by John T. Elfvin, *Judge*, of the District Court of the Western District of New York, 501 F.Supp. 880, granting the petition of Seymour Styers, a state prisoner now on parole, for a writ of habeas corpus. Styers, who was on June 24, 1974, convicted after a jury trial of robbery and possession of a dangerous weapon, successfully argued below that the trial judge denied him his Sixth and Fourteenth Amendment rights to confront the witnesses against him by allowing the state prosecutor to withhold the identity of an informer after eliciting testimony from a police officer that the informer had told police that the robbers could be found at a certain address. We affirm, but on a different ground. The record reveals that the procedures employed by the police to secure an identification of Styers by the two witnesses to the robbery were unconstitutionally suggestive.

On December 27, 1973, two men entered a Buffalo, N.Y., liquor store occupied by the proprietor, Stephen Faso, and his friend Paul Dodge. After checking certain whiskey brands and lingering a few minutes, they left the store. Faso, who was busy waiting on another customer, paid little attention to them. Dodge watched them meet with a third person on the corner. Five minutes after leaving the store the two returned and robbed it. One man held a knife to Dodge's throat, while the second held a knife to Faso's chest and emptied the cash register. The robbery lasted one to three minutes. During the robbery, Dodge, who was far-sighted, was not wearing his glasses. He and Faso were terrified, with Faso concentrating his attention on the knife used to threaten his life.

Faso called the police immediately after the robbery. He and Dodge gave a general description of the men as "a colored male twenty-five to thirty years old, five foot eight inches tall; a colored male about six foot, between twenty-five to thirty years old, wearing a black hat." The next day, Buffalo Police Officer Cannizzaro brought Dodge into the station to look at mug shots. From these photographs, Dodge identified one Anthony Burt as one of the robbers.

While Officer Cannizzaro was meeting with Dodge, he received a phone call from an unidentified informant who, according to Cannizzaro, told him that the two Burt brothers (Anthony and Vincent) and a third participant in the robbery could be found at 47 Whitney Place. After telling Dodge that he was leaving to pick up the robbery suspects, Cannizzaro went with Detective DiPasquale to 47 Whitney Place and arrested the two Burt brothers and Seymour Styers, the petitioner-appellee. Their arrest of Styers, based entirely on the informant's statements, was concededly without probable cause.[1]

The police officers immediately brought Vincent and Anthony Burt and Seymour Styers before Dodge at the station, to see if he could identify them as the robbers. Dodge identified Vincent Burt and Styers, recanting his previous identification of Anthony Burt. Dodge also made an oral statement, later reduced to a written statement which he signed, that Vincent Burt had been the man who held a knife to his throat and that Styers had approached Faso with a knife in his hand. Styers and Vincent Burt were then booked and photographed.

---

1. Although the arrest of Styers was unlawful, we are precluded by the Supreme Court's ruling in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), from granting him a writ of habeas corpus on that account.

Detective DiPasquale and Dodge returned to Faso's liquor store armed with photos of Styers and Vincent Burt and several mug shots.[2] The photos of the two suspects were fresh glossy Polaroid color prints, while the mug shots were older and black and white, depicting individuals bearing no substantial resemblance to the two suspects. Anthony Burt's photograph was not among this collection. When DiPasquale and Dodge entered the store, Dodge told Faso that he had just seen the two robbers at the police station. DiPasquale then laid down the photos he had brought, including the two fresh color shots of Vincent Burt and Styers, and asked, "Are these the two fellows?" Faso picked the Polaroid color photos of Styers and Vincent Burt.

Anthony Burt was not charged with any crime relating to the robbery of the liquor store. Vincent Burt pleaded guilty to third degree robbery. Styers pleaded innocent, suggesting that Anthony Burt, and not he, must have been the second robbery participant, and was brought to trial.

At a pretrial hearing pursuant to the ruling of *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and again at trial, both Faso and Dodge exhibited considerable confusion in testifying to their identification of the robbers. Dodge, who had picked out a picture of Anthony Burt when Officer Cannizzaro had first shown him pictures, and who had then changed his mind and pointed to Vincent Burt as the man who put a knife to his throat, changed his mind again at the pretrial hearing and indicated that Styers had been the man who pulled the knife on him. He then said that he had identified Styers before the showup, apparently confusing Styers with Anthony Burt, but withdrew his statement when prompted later.

At one point in the suppression hearing Dodge also identified Anthony Burt as Styers' accomplice in the robbery, apparently confusing Anthony Burt with his brother Vincent, and once again recanted this position when given a second chance. Dodge explained at the pretrial hearing that he was sure Styers, and not either of the Burts, had drawn the knife on him because he remembered the scar on Styers' chin. At trial, when he had a chance to see that Vincent Burt, and not Styers, had a scar, he changed his testimony again, stating that he remembered Styers as his assailant from his sideburns and wide nose, and confirming that Vincent, not Styers, had the scar.

At the *Wade* hearing Faso also initially identified a picture of Anthony Burt as Styers' accomplice, but then responded to the state prosecutor's cues by correcting himself and identifying Vincent Burt as the second robber. Faso seemed quite sure that Styers had been the man who pulled a knife on Dodge and eventually asserted that Vincent Burt had pulled the knife on Faso himself. At trial Faso denied having heard Dodge say that he had just seen the robbers at the police station on the afternoon when Dodge and DiPasquale came to his liquor store, until confronted with his contrary *Wade* hearing testimony that Dodge had made this statement upon entering the liquor store.

The confusion and internal inconsistencies in the statements and testimony of Faso and Dodge were compounded by their additional testimony at both the *Wade* hearing and later at trial that prior to the robbery they had both been well acquainted with the Burt brothers and Styers. Faso said that he had sold liquor to Vincent Burt 40 or 50 times, and that Styers usually came to the store with the Burt brothers. Dodge testified that he knew the Burts from seeing them in the neighborhood eight or ten times a day, usually with Styers. He even knew the Burts' last name and their approximate address. Yet neither witness told police, either in his immediate post-robbery description or at any other time until well after the show-up and photographic

**2.** Officer DiPasquale testified that he showed Faso seven photos, including four Polaroid color prints of Vincent Burt and Styers. Faso testified that he was shown four photos, two of

which were color prints and two older black and white photos of persons with different features.

display, that he had recognized any of the robbers as someone known to him before the robbery. The two witnesses offered a collection of troubling explanations for this glaring omission. Dodge stated at the suppression hearing that at the time of the crime he did not think the perpetrators were Styers and "the Burt boy." Faso said, "one customer looks the same as the other one," and confessed, "When they came and robbed me I wasn't sure who they were." Both witnesses also were unable to explain why they had described the robbers as between 25 and 30 when both Styers and Vincent Burt were under 18.

Styers was convicted by the jury, and his conviction was upheld without opinion by the New York State Appellate Division, *People v. Styers*, 49 A.D.2d 699, 373 N.Y. S.2d 1017 (4th Dept. 1975). The New York Court of Appeals denied leave to appeal, and Styers filed a petition in the Western District of New York for a writ of habeas corpus on September 12, 1975, which was not acted on by Judge Elfvin for three years, until September 20, 1978, when he appointed counsel to represent Styers.

On October 28, 1980, five and one-half years after the filing of the petition,[3] Judge Elfvin granted it. He found that the state trial judge had violated Styers' right to confront the witnesses against him by allowing officer Cannizzaro to withhold the informant's identity after testifying about an inculpatory extrajudicial statement made by the informant. Since the jury heard that Styers had been arrested with the Burt brothers in the place where the informant had said the robbers would be, Judge Elfvin concluded that the hearsay testimony constituted forceful circumstantial hearsay evidence inculpating him. Judge Elfvin found no independent indicia of the informant's inherent reliability that would prevent the non-disclosure of the informant's identity from posing a problem of constitutional magnitude under his reading of *Dutton v. Evans*, 400 U.S. 74, 88–89, 91 S.Ct. 210, 219–220, 27 L.Ed.2d 213 (1970).

Judge Elfvin was less impressed with Styers' claim that the show-up before Dodge and the photographic display before Faso violated his constitutional rights. He found the identification procedures with the photographic display to be free from undue suggestiveness and, although he held the show-up before Dodge to be suggestive, he also found that both men's identifications were sufficiently reliable to purge the taint of any improper suggestiveness. Applying the criteria of *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), to determine whether the identification was sufficiently reliable to purge the taint of suggestive identification procedures, he found that the witnesses' opportunity to view the criminal, their degree of attention to the criminal during the crime, and their level of certainty, as well as the accuracy of their prior descriptions and the short period of time between the crime and the identifications, indicated that their identifications of Styers were reliable.

## DISCUSSION

The state argues that (1) Styers failed to exhaust his available state remedies with respect to his Confrontation Clause claim before bringing this habeas corpus action, and (2) the district court erred in upholding that claim on its merits. Styers understandably takes the opposite position on both questions. Although the parties have devoted much of their briefs and argument to these two issues, we find it unnecessary to resolve them for the reasons that we are persuaded that the impermissibly suggestive procedures leading to the identifications of Styers by Dodge and Faso, when coupled with their later identifications, mandated suppression of their later in-court identification testimony and that the state court violated Styers' Fourteenth Amendment rights in admitting this testimony. It is undisputed that Styers exhausted his available state remedies with respect to the identification issue.

---

**3.** No explanation was offered by Judge Elfvin for his delay of 5½ years in ruling upon the petition. See *Miller v. Erie Lackawanna Railway Co.*, 645 F.2d 140, 141 (2d Cir. 1981).

■ The district court properly recognized that determination of the constitutionality of the admission of a witness' in-court identification of a defendant requires a two-part inquiry. First, the court must determine whether the circumstances surrounding the witness' pre-court identification were unduly suggestive of the suspect's guilt. Second, the suggestiveness of the identification procedures must be balanced against factors indicating that the in-court identification was independently reliable. Even grossly suggestive procedures will not require suppression of a witness' identification testimony if it is clearly reliable, independent of improper procedures. *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *Jackson v. Fogg*, 589 F.2d 108, 111 (2d Cir. 1978); *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977):

> "We therefore conclude that reliability is the linchpin in determining the admissibility of identification testimony.... The factors to be considered are set out in *Biggers*, 409 U.S. at 199–200 [93 S.Ct. at 382]. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." 432 U.S. at 114, 97 S.Ct. at 2253.

■ The district court concluded that the show-up before Dodge was improperly suggestive. We agree. However, it also held that the photographic display shown to Faso was not unduly suggestive and that the two in-court identifications of Styers were independently reliable, justifying their admission. With these latter rulings we disagree.

Styers was shown to Dodge under circumstances strongly suggesting that he be identified as one of the robbers. Officer Cannizzaro first told Dodge that he was leaving to pick up the robbery suspects, and immediately upon his return to the station the three men (the two Burts and Styers) were displayed to Dodge. No pressing necessity dictated that the police use a show-up instead of a line-up. See *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Although notification to a witness that a suspect has been picked up will not automatically result in suppression of the witness' subsequent identification testimony, see *United States v. Danzey*, 594 F.2d 905 (2d Cir. 1979), (witness had already identified a picture of the defendant before the post-arrest identification), this procedure may be dangerously suggestive when combined with a show-up rather than a fair line-up. *Jackson v. Fogg, supra.* Dodge could reasonably conclude that he was expected to identify the individuals brought before him by Officer Cannizzaro. It is precisely this expectation which police must not unwarrantedly generate. We have no doubt that the show-up before Dodge was improperly suggestive.

■ The same difficulties attend the photographic display before Faso. Faso was undoubtedly predisposed toward selection of the photo of Styers by the statement of Dodge, whom the police brought with them to the photographic display, that he had just seen at the precinct house the fellows who had robbed Faso's store. Thereupon Faso was shown the small group of photos, only two of which (Styers and Vincent Burt) were fresh and in color, and asked by Officer DiPasquale, "Are these the two fellows?" The dramatic difference between the color shots and the black and white mug shots, combined with the officer's implication that Faso was expected to choose a couple of photos, was highly suggestive.

Significantly, even though there was some ground to suspect that Anthony Burt rather than his brother or Styers was one of the robbers (Dodge had earlier identified Anthony's photo as that of one of the robbers), Anthony's photograph was not included among those displayed to Faso. Moreover, none of the other men pictured in the photographic display remotely resembled either the Burts or Styers, or answered the

broad general descriptions given earlier by Dodge and Faso. In view of the suggestiveness of these identification procedures and the troubling ease with which misidentifications can be procured, see *Jackson v. Fogg, supra,* 589 F.2d at 112, we conclude that Styers has satisfied the first prong of the *Neil v. Biggers/Manson v. Brathwaite* test.

Apart from the corrupted identifications obtained through improperly suggestive procedures, application of the *Neil v. Biggers* criteria confirms that the in-court testimony of Dodge and Faso identifying Styers as the second robber was insufficiently reliable to save it from suppression. Both witnesses concededly had an opportunity to view the criminals, since the robbery lasted a few minutes and took place in a relatively well-lit store in mid-afternoon. Both also identified Styers as the robber within a day of the crime. However, their identifications were replete with confusion and error. Dodge at different times stated with conviction that Anthony Burt, Vincent Burt, and finally Styers was the man who put a knife to his throat. Faso initially identified Anthony Burt as one of the robbers at the *Wade* hearing, and backed down only when coached to do so. Immediately following the robbery Faso and Dodge described the robbers but vaguely and as persons 25 to 30 years old, whereas both defendants were under 18. Dodge stated that he was terrified during the robbery and that he was far-sighted but was not wearing his glasses when it took place. Faso admitted that he was afraid and almost hysterical during the robbery, and confessed that he "was looking at the knife most of the time." Most significantly, neither man told police that he had known the robbers from having seen them many times, and even knew their names and addresses, until after their identification of Anthony Burt, later abandoned, and their identification of Styers and Vincent Burt in the suggestive show-up and photo display. Since the witnesses were acquainted with the defendants all along, there was something radically wrong with their inability to describe and identify them earlier. Possibly the answer lay in their genuine but unrevealed uncertainty as to whether Anthony Burt or Styers was the second robber.

The identifications here are far less reliable than those upheld in *Biggers* and *Brathwaite*. In *Biggers* the victim was with her assailant for almost half an hour, with ample opportunity to face him directly in adequate light. Her description to the police, "which included the assailant's approximate age, height, weight, complexion, skin texture, build and voice, might not have satisfied Proust but was more than ordinarily thorough. She had 'no doubt' that respondent was the person who raped her." Though she did not identify the eventual defendant until seven months after the crime, the Court noted that she had at no time during the intervening seven months identified another individual as her assailant, despite a constant barrage of line-ups and photographic displays. 409 U.S. at 200–01, 93 S.Ct. at 382–83.

In *Brathwaite* the witness was a trained police officer who had concentrated on remembering the suspect's appearance when he saw him for the first time. The officer saw the defendant for two or three minutes in ample light, paid close attention to detail, described the suspect accurately and thoroughly, was absolutely certain of his identification, never wavered, and identified the defendant only two days after seeing him. As a black man himself, the Court noted, the officer was unlikely to notice only the black defendant's general features. Neither his testimony, nor the testimony of the victim in *Biggers* was, unlike the testimony here, significantly undermined at the *Wade* hearing or on cross-examination.

Under normal circumstances, the reliability of a witness' identification is a matter to be assessed by the jury, and we will not lightly overturn the jury's decision. But when the constitutionality and accuracy of the identifications are placed in doubt by the use of improper procedures likely to elicit nothing more than confirmation that a selected suspect is the criminal being sought, we must view all subsequent identification testimony with some suspicion, lest

the suggestive procedures irrevocably taint the witnesses' perceptions. If, upon the totality of the circumstances, including the suggestive procedures used by the police, there is a substantial likelihood of misidentification, the witnesses' in-court identification testimony must be suppressed. *Neil v. Biggers, supra*, 409 U.S. at 201, 93 S.Ct. 383. This is such a case. After balancing the circumstances bearing upon the reliability of the identification and the corrupting effect of the suggestive show-up and photographic display, as *Manson v. Brathwaite* requires, we conclude that the in-court identification testimony of Dodge and Faso should have been suppressed. Accordingly, a valid ground existed for issuance of the writ of habeas corpus.

Affirmed.