Walter McNARY, Petitioner-Appellee,

v.

Dewey SOWDERS, Superintendent, Respondent-Appellant.

No. 80–5450.

United States Court of Appeals, Sixth Circuit.

Argued June 4, 1981.

Decided Oct. 2, 1981.

Rehearing and Rehearing En Banc Denied Dec. 11, 1981.

Steven Beshear, Atty. Gen. of Kentucky, James L. Dickinson, Frankfort, Ky., for respondent-appellant.

Rodney McDaniel, Asst. Public Advocate, Frankfort, Ky., for petitioner-appellee.

Before JONES, Circuit Judge, PECK, Senior Circuit Judge and HORTON,* U. S. District Judge.

---

* The Honorable Odell Horton, United States District Judge, Western District of Tennessee, sitting by designation.

HORTON, District Judge.

The Commonwealth of Kentucky appeals from a judgment of the United States District Court for the Western District of Kentucky granting the petition of Walter McNary for a writ of habeas corpus.

Walter McNary and Keith Moore were indicted by a grand jury in Simpson County, Kentucky, for the offense of armed robbery. They were charged with the robbery of Harold Carter's Sunoco Service Station located on Interstates 65 and 100 in Simpson County, Kentucky. The robbery occurred between 9:00 p. m. and 10:00 p. m., on November 22, 1974. Approximately $400.00 in cash and a carton of cigarettes were taken during the robbery.

McNary and Moore were convicted of armed robbery and sentenced to confinement for a period of 22 years. The Supreme Court of Kentucky, in a written opinion, affirmed the convictions. Thereafter, McNary and Moore filed petitions for writs of habeas corpus in the United States District Court for the Western District of Kentucky. The district court denied Moore's petition for habeas corpus ruling that an in-court identification of Moore was sufficiently reliable under the "totality of the circumstances." However, the district court, disagreeing with the findings of the Kentucky court, determined that an in-court identification of McNary was less reliable because he was a different height than the description of him originally given by the witnesses and because he was not the gunman in the robbery. Therefore, the district court granted his petition for a writ of habeas corpus unless the Commonwealth of Kentucky granted McNary a new trial within sixty days.

The question before this Court is whether the district court, reviewing the decision of the Supreme Court of Kentucky pursuant to McNary's petition for a writ of habeas corpus, granted that Court's judgment, affirming appellee's conviction, the presumption of correctness required by 28 U.S.C. § 2254.

For the reasons hereafter stated, we reverse the judgment of the district court and remand to that court with instructions to dismiss the writ of habeas corpus.

During McNary's state criminal court jury trial on March 28 and 29, 1977, Phillip Haddock and Jerry Britt testified they were working as attendants at the service station which McNary and Moore robbed. Haddock described what happened on the evening of the robbery as follows:

Well, Jerry [Britt] hadn't left yet and the car pulled up the station drive, pulled up on the dark side which really wasn't anything odd. One guy came and asked where the restroom was and I told him, still nothing strange and as he come back he went to his car and put on a jacket and the two of them entered the station.

\* \* \* \* \* \*

And they walked in and one looked at the cigarette rack and turned around and pointed the gun on me and told me to get on the floor which I did.

The man with the gun asked Haddock where the money was and told him to get it. Haddock emptied "something like $75.00" from the cash register and gave it to him. The gunman insisted that it was not all the money. When Haddock answered that was all he had, the gunman said, "[E]ither you give me the rest of it or I am going to blow the top of your head off."

Haddock testified he then told the robbers where the other money was. He was ordered to get it, which he did. Haddock admitted he concentrated his attention on the barrel of the gun. He also recalled that while the robbery was in progress a woman with the two men came inside the station, picked up a carton of cigarettes, and walked back outside.

It is undisputed that within one month of the robbery but approximately 2 years and 3 months prior to the trial, investigating officers showed the victims of this robbery two police "mug shot" photographs, one of McNary and one of his co-defendant Moore. Haddock testified that when the police showed him the two photographs, he was not really sure from looking at the photographs that they depicted the robbers.

"[W]hen you look at a photograph," he said, "that is not like looking at the man himself."

Haddock also testified that at the time of the robbery he had in the front pocket of his coveralls a .22 calibre RG revolver which was taken from him. Police recovered that gun when it was thrown from the vehicle matching the description of the vehicle used in the robbery. Police stopped the vehicle which contained McNary and Moore. Haddock identified a pistol entered in evidence during the trial as being his revolver which the defendants had taken from him during the robbery.

On the morning of the trial, Haddock saw the two defendants in handcuffs, accompanied by a jailer, walking up the stairs to the courtroom. Defense counsel argued to the trial court that this procedure was suggestive but the judge ruled this was not impermissibly suggestive.

On redirect examination Haddock was asked if he recognized McNary and Moore as the robbers "regardless of the circumstances that exist here today." He replied, "To the best of my knowledge, yes, I recognize them, but it has been three years."

The identification of the defendants by Haddock was corroborated by the testimony of the other station attendant, Jerry Britt. Britt testified that "two guys," one armed with a nickel plated pistol, came in and robbed them. He said they were not wearing masks and made no attempt to hide their faces. During his direct testimony, the following colloquy took place.

Q.33 Is your identification of these defendants as the people who robbed you based upon your recollection of what you saw on the day of the robbery or is it based on the fact that they are the only two black people in this Court Room [sic] today?

A. Well you know it has been three year [sic] ago or something like that but it is pretty obvious that a man gets a gun drawed on him he can pretty well identify who done it if it was ten years from now.

On cross-examination Britt testified that about a year and a half before the trial, he accompanied the sheriff to Indiana to attempt to identify the defendants. At that time Britt said that he "wasn't for certain" that McNary and Moore were the robbers.

The state trial judge made the following finding on Haddock's testimony:

It is the Court's view that this witness, Haddock, has with his limited vocabulary, very limited I would add, to the best of his ability said that he recognized these men as the ones who robbed him with a pistol in the presence of a third person, a colored woman. If this man were better educated he could have answered these questions better, but I cannot penalize the Commonwealth because the witness he has chosen is not well educated, *nor can I say that I have any doubt that this man's identification was based upon knowledge gained prior to the in-court identification, so I will have to overrule the Defendants' motion.* (Emphasis added).

Passing judgment upon the testimony of Haddock and Britt as witnesses, the state trial court, in its denial of a defense motion for a directed verdict, stated:

I think we have gone far enough on this. One of the witnesses made a definite identification of both [defendants]. The other one made an identification that was them as best he could remember, or to the best of his knowledge or belief. One actually put the pistol on that person and based on that I will have to overrule your Motion for a directed verdict.

The jury returned guilty verdicts as to both defendants who were sentenced to the state penitentiary for 22 years each.

Upon direct appeal, the Supreme Court of Kentucky considered arguments of counsel and reviewed the entire record in this case. In its opinion affirming both convictions, the Kentucky Supreme Court made the following factual determinations:

[W]e are satisfied that Haddock's identification of Moore and McNary was not induced by the suggestive photo display. As described by both Britt and Haddock,

the robbery must have taken at least several seconds, and perhaps minutes, to transpire: the robbers entered the office, returned to their car, reentered the office, emptied the cash register, emptied the coffee machine and kicked in a door to a back room before leaving. During this time, the robbers wore no masks and stood within feet of Haddock. Haddock was no casual or passing observer, but paid close attention to his assailants, as witnessed by his ability to distinguish between the two in identifying Moore as the gunman. Although Haddock's description of the robbers, which included their race, heights and weights, was not as detailed as it might ideally have been, it was reasonably accurate so far as it went. And while the level of certainty displayed by Haddock at the photographic showup leaves something to be desired, . . . that level of certainty did not dramatically improve at the subsequent in-court identification. Under these circumstances we are convinced that Haddock's identification of Moore and McNary was reliable. . . .

Thus, the Kentucky Supreme Court held that the in-court identification was not based on the suggestive photo display.

Appellee McNary then filed his petition for a writ of habeas corpus in the United States District Court for the Western District of Kentucky. The petition was referred to a Magistrate on the issue of effective assistance of counsel. In a memorandum opinion, the district judge on the issue of in-court identification differed with the findings of the Supreme Court of Kentucky. The judge concluded that the in-court identification of McNary was unreliable and therefore appellee's right to due process had been violated. In its memorandum opinion, the district court declared, "The *only* link between McNary and the robbery was eyewitness identification. We are unable to conclude that the totality of the circumstances reflected by the record supports a finding that Haddock's testimony was reliable." (Emphasis added).

The district court based its finding upon facts which it felt showed that 1) almost three years elapsed between the crime and Haddock's in-court identification; 2) a strong probability existed that Haddock's and Britt's attention was concentrated on Moore, who held the gun; 3) Haddock's previous description of McNary was not accurate enough to be characterized as reliable due to a discrepancy in height description; and 4) the witnesses' level of certainty as to the identity of the robbers was not high either before or during trial, and Haddock was not able to identify McNary positively when shown his photograph a few weeks after the robbery. The district judge granted the writ as to McNary[1] and ordered that he be released unless the Commonwealth of Kentucky granted him a new trial within 60 days. The Commonwealth has appealed that decision.

The review by a district court of the judgment of a state court of competent jurisdiction, pursuant to a habeas corpus petition, is, by federal statute, a limited review.

The limitations upon the federal district court are elucidated in 28 U.S.C. § 2254(d) which provides:

> In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, *a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct,* unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—
>
> 1) that the merits of the factual dispute were not resolved in the State court hearing;

---

1. The trial judge while recommending the petition be granted as to McNary on the identifica-

tion issue had previously denied the co-defendant Moore's petition based on the same ground.

2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

3) that the material facts were not adequately developed at the State court hearing;

4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

7) that the applicant was otherwise denied due process of law in the State court proceeding;

8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances, respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

28 U.S.C. § 2254(d) (emphasis added).

At the time of its decision in this case, the district court did not have before it the case of *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) which involved a suggestive pretrial showup and an alleged in-court misidentification. Asserting that the interest in federalism recognized by Congress in enacting § 2254(d) requires deference by federal courts to factual determinations of all state courts, the Supreme Court stated:

> Federal habeas has been a source of friction between state and federal courts and Congress obviously meant to alleviate some of that friction when it enacted subsection (d) in 1966 as an amendment to the original Federal Habeas Act of 1867. Accordingly, some content must be given to the provisions of the subsection if the will of Congress be not frustrated.

101 S.Ct. at 770.

The Court then declared the standard of review which should be followed by a federal court dealing with a writ of habeas corpus as to a state prisoner:

> But it is clear that in adopting the 1966 amendments, Congress in § 2254(d) intended not only to minimize that inevitable friction but to establish that the findings made by the state court system "shall be presumed to be correct" unless one of seven conditions specifically set forth in § 2254(d) was found to exist by the federal habeas court. If none of those seven conditions were found to exist, or unless the habeas court concludes that the relevant state determination is not "fairly supported by the record," "the burden shall rest upon the applicant to establish *by convincing evidence* that the factual determination by the State court was erroneous."

101 S.Ct. at 770–71 (Emphasis in original, footnote omitted).

██ Applying *Sumner's* holding and the standards of § 2254(d) to the present case, it is clear that the merits of the factual dispute as to the identification were resolved by the judge in the state court trial. The Supreme Court of Kentucky then heard full arguments in this case and filed a written

opinion. The fact finding procedure employed by the state courts, both trial and appellate, was adequate to afford McNary a full and fair hearing. The material facts were adequately developed in the Kentucky court proceedings. The Kentucky courts had subject matter and *in personam* jurisdiction. McNary was not otherwise denied due process of law in the Kentucky courts. The state court proceedings, considered as a whole, fairly support the factual determinations of the trial judge and the Supreme Court of Kentucky. Since no exception to the presumption of correctness accorded the state court's factual determinations is extant in this case, it was appellee's burden to establish by convincing evidence that the factual determination was erroneous. This, appellee has failed to establish.

The United States Supreme Court in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), addressed the issue involving misidentification of a defendant. The Court noted that in considering due process protection against admission of evidence derived from suggestive identification procedures, the court must:

> turn then to the central question, whether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive. . . . [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

409 U.S. at 199, 93 S.Ct. at 382.

■ On the basis of the test set forth in *Neil* and the corroborating evidence in the record, we find ample support for the trial court's determination that the in-court identification of McNary was reliable despite the suggestive pretrial photographic identification procedures. Even without the photographic identification evidence, there is ample evidence of positive identification. *United States v. Counts*, 471 F.2d 422, 425 (2d Cir.), *cert. denied*, 411 U.S. 935, 93 S.Ct. 1909, 36 L.Ed.2d 395 (1973).

The witnesses had ample opportunity to view the robbers at the time of the crime. Both Haddock and Britt testified that they saw McNary face to face during the robbery and that he neither wore a mask nor attempted to disguise himself. See *U. S. v. Henderson*, 464 F.2d 260, 265 (2d Cir. 1972) (Under totality of the circumstances involving a witness who got a "good look" at a robber but was later shown a single photograph of him, no substantial likelihood of irreparable misidentification was created). In addition, they testified that defendants were at the scene of the crime long enough to:

1) park their vehicle, have one of them enter the store, ask where the restroom was located, then go back to the vehicle, put on a jacket, and reenter the store;

2) have both men enter the service station;

3) demand money from the cash register;

4) threaten to shoot the witnesses;

5) kick open the door to a back room;

6) force a witness to open a coffee machine which contained money;

7) take a gun from Haddock;

8) allow their female companion to enter the service station, remove a carton of cigarettes, then leave; and

9) force the witnesses into the back room.

The attention span of Haddock was illustrated further by the following detailed descriptions which he gave at trial:

> The tall one was wearing a black leather waistline jacket with a hat and the shorter one was wearing a long coat. I saw a chrome or nickel plated revolver.
>
> [The vehicle] was a '66 or '67 Plymouth or Dodge wagon, . . . four door wagon . . . bluish green.

Likewise, Britt's description of the pistol and vehicle were given in detail at trial. Britt's testimony corroborated the testimo-

ny of Haddock. In addition, the recovery of the pistol which had been thrown from a vehicle in which both McNary and Moore were riding and had been taken from Haddock during the robbery, is a powerful corroborative circumstance to be considered in this case.

Where the witnesses had a good opportunity to observe the defendants during the robbery, subsequent in-court identification of the defendants was not irreparably tainted by an impropriety in the intervening photographic identification. *United States ex rel. Frasier v. Henderson*, 464 F.2d 260, 265 (2d Cir. 1972).

Obviously, there were inconsistencies in the testimony of witnesses Haddock and Britt at the trial of McNary. However, this Court has held that a defendant in a criminal trial is denied due process only when the identification evidence is so unreliable that its introduction renders a trial unfair. The Court stated in *Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir. 1979), *aff'd sub nom. Watkins v. Sowders*, 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981):

> The issue with respect to each one of the identifications ... is limited to whether their introduction into evidence violated due process.... As long as there is not a substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given the identification.

608 F.2d at 253 (citing, *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). Considering all of the evidence in this record, and giving that evidence a full and fair appraisal, the Court is satisfied that there was no substantial likelihood of a misidentification in this case.

The jury in the state trial court weighed the testimony pertaining to the identification of McNary and Moore and returned guilty verdicts as to both men. The trial judge, as well as the justices of the Supreme Court of Kentucky, concluded from all of the evidence admitted during the trial, that the in-court identification of each defendant was reliable and that no substantial likelihood of a misidentification of ei-

ther defendant occurred in this case. This court presumes that factual determination by the trial court and by the Supreme Court of Kentucky to be correct. That factual determination is fairly supported by the evidence contained in the trial record. The appellee McNary has certainly failed to establish by convincing evidence that such a factual determination is erroneous.

With respect to the district court's failure to adhere to the presumption of correctness of the state court proceedings and failure to mention § 2254(d) in its opinion, the United States Supreme Court in *Sumner* is instructive:

> Indeed, the [federal appellate] court did not even refer in its opinion to § 2254(d).... [I]ts opinion went directly to a discussion of the "facts" and constitutional merits of the respondent's claims.
>
> *    *    *    *    *    *
>
> Obviously, if the [federal] Court of Appeals ... had simply inserted a boilerplate paragraph in its opinion that it had considered the state record as a whole and concluded that the state appellate court's factual determinations were not fairly supported by the record, this objection to the judgment of the Court of Appeals could not as easily be made.
>
> *    *    *    *    *    *
>
> When Congress provided in § 2254(d) that a habeas court could *not* dispense with the "presumption of correctness" embodied therein unless it concluded that the factual determinations were not supported by the record, it contemplated at least some reasoned written references to § 2254(d) and the state court findings.
>
> *    *    *    *    *    *
>
> Congress meant to insure that a state finding not to be overturned on the basis of the usual "preponderance of the evidence" standard in such a situation. In order to ensure that this mandate of Congress is enforced, we now hold that a habeas court should include in its opinion granting the writ the reasoning which led it to conclude that any of the first seven factors were present, or the reasoning which led it to conclude that the state

finding was "not fairly supported by the record." ... No court reviewing the grant of an application for habeas corpus should be left to guess as to the habeas court's reasons for granting relief notwithstanding the provisions of § 2254(d).

101 S.Ct. at 769–771 (footnote omitted, emphasis in original). Thus, the Supreme Court in *Sumner* concluded that when a federal habeas court reaches a different result than a state trial or appellate court, "Congress was intent on some sort of written explanation of the § 2254(d) factors when such a result does occur." *Id.* at 772.

Therefore, because the district court failed to presume the state court findings to be correct, apparently used the preponderance of the evidence standard for review, and failed to refer to § 2254(d) in its opinion, the district court committed reversible error. However, in deference to the court below, it must be noted again that the Supreme Court's decision in *Sumner* was not available to the district court when the petition for habeas corpus was granted in this case.

For the reasons stated in this opinion, the judgment of the district court is reversed and the case is remanded with instructions to dismiss McNary's petition for a writ of habeas corpus.

REVERSED AND REMANDED.