Lonnie S. SALES, Petitioner-Appellant,

v.

David R. HARRIS, Superintendent, Green Haven Correctional Facility, Respondent-Appellee.

No. 718, Docket 80–2378.

United States Court of Appeals, Second Circuit.

Argued Jan. 29, 1982.

Decided April 12, 1982.

Rehearing and Rehearing En Banc Denied June 2, 1982.

Barry Bassis, New York City (The Legal Aid Society, Federal Defender Services Unit, of counsel), for petitioner-appellant.

Paul Milbauer, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of N. Y., Gerald J. Ryan, Asst. Atty. Gen., New York City, of counsel), for respondent-appellee.

Before MESKILL, CARDAMONE and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

Petitioner Lonnie S. Sales, convicted of first degree robbery in New York State court, appeals from a judgment of the United States District Court for the Southern District of New York, Leonard B. Sand, *Judge*, denying his application for a writ of habeas corpus. On appeal, Sales primarily contends that the state trial judge erred in denying his motion to suppress identification testimony, that the trial judge improperly instructed the jury regarding the identification testimony, and that the prosecutor made improper remarks during summation. Petitioner claims that each of these errors deprived him of due process of law guaranteed by the Fourteenth Amendment. For the reasons stated below, we find that the motion to suppress was properly denied since the challenged identification testimony was sufficiently reliable and we further find that the prosecutor's closing argument did not deprive Sales of a fair trial. As to the petitioner's challenge to the judge's charge to the jury, we rule that a portion of the trial judge's instructions impermissibly took from the jury's consideration a factual

issue concerning the reliability of the identification testimony. We find, however, that this error was harmless beyond a reasonable doubt and accordingly we affirm.

## I.

Appellant was charged with first degree robbery, N.Y. Penal Law § 160.15, in a Bronx County indictment which alleged that on June 15, 1977, Sales forcibly stole property from Jill Kaggen in a Daitch Shopwell supermarket and in the course of the robbery displayed a pistol. Prior to the trial, Sales moved to suppress Kaggen's testimony regarding the corporeal identification she made of him prior to trial and to preclude at trial an in-court identification of him by Kaggen.[1]

### The Wade Hearing

The state trial judge held a two-day hearing with respect to the motion, at which the following evidence was adduced. Kaggen testified that at about 6:30 p. m. on June 15, 1977, a man she identified as the appellant appeared at the deli counter at the Shopwell supermarket where she and Catherine Bevilacqua were working. The appellant, wielding a pistol, ordered the two women to lie on the floor. He then instructed Kaggen to open the cash register and to stand up and load a bag with money. After Kaggen, with Sales' assistance, had loaded the bag, Sales handcuffed the two women together. Appellant then fled. During most of this encounter, which lasted "a few minutes", Kaggen testified that she was able to view appellant's face under the store's fluorescent lighting. Immediately after the robbery, Kaggen had an asthma attack. Shortly thereafter, the police arrived at the supermarket and though Kaggen did not describe the robber at that time, the record does not disclose that the police officers asked her to do so. Kaggen testified at the hearing that the robber had a moustache, but she did not recall his having a beard.

According to Kaggen, approximately one week after the robbery, two policemen came to the store and asked her to look at some photographs and to see whether she could identify the man who had brandished the gun and taken the money at the deli counter. The police gave her two manila envelopes each of which contained ten to twelve photographs of men. Most of the men depicted were black, although there were a few whites and hispanics. She selected the photograph of Sales, who is black, as a picture of the man who had confronted her with a gun at the deli counter. She testified that the officers made no suggestive statements while she viewed the photos.

Kaggen further testified that on August 25, 1977, Detective William Dowdell and another officer came to the Shopwell where she was working. They told her they had a suspect in custody, and asked her to view a lineup at the stationhouse. Thereafter, Kaggen viewed the lineup, which was comprised of five black males of similar age. She identified appellant as the robber after the five men were asked to stand at her request, revealing their differing heights. A photograph of the lineup, with the men seated, was admitted in evidence and Kaggen testified that the officers did not encourage her to select any particular person nor did they make any suggestive statements to her. Kaggen made an in-court identification of Sales during the evidentiary hearing.

Detective John Taylor of the Bronx Robbery Squad testified at the hearing that he had given Kaggen two sets of photographs at the end of August 1977, rather than in June as Kaggen had testified. Taylor stated that each of the two folders contained eight to twelve photographs and that the arrays had not been preserved because the police believed that all of the perpetrators

---

1. Under New York law, at trial the prosecution may present evidence of a pretrial corporeal identification, as well as an in-court identification, N.Y.Crim.Proc.Law § 60.30, but may not present evidence of a pretrial photographic identification of the defendant. *See People v. Griffin*, 29 N.Y.2d 91, 93, 323 N.Y.S.2d 964, 965, 272 N.E.2d 477 (1971) (collecting cases); *People v. Carter*, 52 A.D.2d 829, 830, 384 N.Y. S.2d 167, 168 (1st Dep't 1976).

had been convicted. Taylor testified that he made no suggestive statement to Kaggen during her review of the photographs. He confirmed that Kaggen selected the photograph of appellant as a picture of the robber.

Detective Dowdell of the Bronx Robbery Squad testified concerning the conduct of the corporeal lineup at which Kaggen identified Sales. On August 25, 1977, Dowdell picked up Kaggen at the Shopwell store and drove her to the stationhouse. Kaggen viewed five black men including Sales, and then signed a form indicating she had chosen Sales as the robber. Dowdell also testified that Kenneth Simmons, the security guard at Shopwell, separately identified Sales at the lineup as one of the men who robbed the store on June 15, 1977. Dowdell was extensively cross-examined by Sales' counsel, as were Kaggen and Taylor.

After hearing oral argument by counsel, the trial judge read his findings into the record and denied the motion to suppress. The judge found that there was nothing suggestive in the photo array shown to Kaggen, that nothing improper had been said to Kaggen by the officers who presented the array, and that the failure to preserve the array had been adequately explained. As to the time when the photo spread was shown to Kaggen, the judge did not reconcile the conflict between the testimony of Kaggen and that of Detective Taylor. He ruled that even if the photo spread was held 24 hours prior to the lineup, rather than in June, the corporeal identification at the lineup was not suggestive. He found that the procedures utilized at the lineup were not suggestive and that the officers did not suggest that Kaggen had to pick out any particular person. Finally, the trial judge found that Kaggen's identification of Sales had an independent basis apart from the display of the photo spread and lineup procedures, since during the robbery she was able to see his face fully and for a sufficient length of time.

### The Trial

At trial, Kaggen described the robbery in detail, including the circumstances of her opportunity to view Sales, and she made an in-court identification of him as the robber. On direct examination, Kaggen also described her identification of appellant at the lineup on August 25, 1977. On cross-examination, appellant's counsel fully explored the circumstances of the robbery, including Kaggen's opportunity to see appellant's face during the robbery, and he completely explored the circumstances of Kaggen's corporeal identification of Sales at the lineup. Furthermore, appellant's counsel carefully questioned Kaggen with regard to the photographs shown to her by the two police officers. Kaggen testified, as she had at the pretrial hearing, that she viewed the photos in June 1977, approximately one week after the robbery.

A customer in the Shopwell store at the time of the robbery testified that five men participated, that he heard one of the robbers back at the deli counter, that he was unable to identify any of the robbers, and that the crime transpired for approximately five minutes. Bevilacqua, Kaggen's co-worker behind the deli counter, testified that the robber, who was carrying a gun, ordered her to kneel on the floor, that Kaggen removed money from the cash register at the robber's request, and that he handcuffed the two women together and then fled. Since she was unable to get a good look at him during the robbery, Bevilacqua was only able to describe the robber as a black male without a moustache or beard.

Police officer Michael Walsh, one of two officers who went to the scene, testified that he found the two women handcuffed together and that he did not recall asking Kaggen for a description of the person who committed the robbery at the deli counter. He also testified regarding the general description of the robber given by Bevilacqua. The state's final witness, Detective Walter Daino, generally described the investigation of the robbery. At the end of the People's case, Sales' motion to dismiss was denied.

For his defense case, appellant called Detective Taylor. The trial judge sustained the prosecutor's objection to questions con-

cerning the photographs shown to Kaggen on the ground that all such issues were concluded at the *Wade* hearing and that the inquiry was a collateral attack on Kaggen's credibility. Sales' counsel did elicit testimony that Taylor had no contact with Kaggen until the latter part of August 1977, at which time he interviewed her concerning "concepts of identification of a perpetrator."

In addition to Taylor, Sales called his barber who testified that appellant had a moustache and goatee throughout 1977. Appellant also offered an alibi defense through the testimony of his girlfriend and her sister. According to their testimony, the girlfriend met Sales at 5:00 p. m. on June 15, 1977, after which they met the girlfriend's sister. The three of them then attended a double feature movie which ended between 11:00 p. m. and midnight. Both witnesses testified that since 1976 Sales had continuously worn a moustache and goatee.

After deliberating for a day and a half, the jury returned a guilty verdict. The trial judge sentenced Sales as a second felony offender to an indeterminate prison term of 12½ to 25 years. By order dated September 25, 1979, the Appellate Division, First Department, affirmed the conviction without opinion; Justice Fein concurred separately with a one sentence statement. 71 A.D.2d 978, 420 N.Y.S.2d 488. On January 29, 1980, Chief Judge Cooke denied leave to appeal to the New York Court of Appeals, 48 N.Y.2d 1034, 425 N.Y.S.2d 1053.

Proceeding pro se, Sales applied for a writ of habeas corpus in federal district court on the grounds that: (1) Kaggen's identification testimony was improperly admitted at trial; (2) evidentiary errors, prosecutorial misstatements, and an improper charge deprived him of a fair trial; (3) there was insufficient evidence to support his conviction; (4) his arrest was unconstitutional; and (5) the prosecutor withheld exculpatory material. In an opinion dated September 8, 1980, Judge Sand denied the

first three claims on the merits and ruled that Sales had failed to exhaust his state court remedies with regard to the other two claims.

Sales filed an appeal with this court and, in the meantime, raised the two non-exhausted issues in state court on a motion to vacate the judgment of conviction pursuant to N.Y.Crim.Proc.Law § 440.10. On October 29, 1980, the Bronx County Supreme Court denied his motion. By Order dated May 1, 1981, this court remanded this matter to Judge Sand in order for him to consider in the first instance Sales' two presumably exhausted claims. In an opinion dated October 19, 1981, Judge Sand ruled that petitioner was procedurally barred from raising his two remaining claims.

On appeal, Sales, through counsel, claims that Kaggen's identification testimony should not have been admitted, and that the court's charge, a related evidentiary ruling, and the prosecutor's summation deprived him of a fair trial. In a pro se supplemental brief, Sales continues to press his claims of unconstitutional arrest and withheld exculpatory material.[2] We will consider each of these claims in turn.

## II.

Reliability is the primary determinant of whether identification evidence—including, as here, an in-court identification and testimony concerning a corporeal identification at a pretrial lineup—should be admitted in evidence at trial. *Watkins v. Sowders*, 449 U.S. 341, 347, 101 S.Ct. 654, 658, 66 L.Ed.2d 549 (1981). The Due Process Clause of the Fourteenth Amendment merely requires the trial judge to exclude evidence which is so unreliable as to indicate "a very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977) (*quoting Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)). "Short of

**2.** Appellant does not challenge Judge Sand's ruling that there existed sufficient evidence to support the conviction.

that point, [identification] evidence is for the jury to weigh." *Manson*, 432 U.S. at 116, 97 S.Ct. at 2253. In determining admissibility, the court must consider the degree (if any) to which the pretrial identification procedures were suggestive of the suspect's guilt. This suggestiveness must be balanced against the factors outlined in *Manson*, 432 U.S. at 114, 97 S.Ct. at 2253, and *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), which include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." 432 U.S. at 114, 97 S.Ct. at 2253. *See Styers v. Smith*, 659 F.2d 293, 297 (2nd Cir. 1981); *Solomon v. Smith*, 645 F.2d 1179, 1185–86 (2nd Cir. 1981); *United States v. Leonardi*, 623 F.2d 746, 754–55 (2nd Cir.), *cert. denied*, 447 U.S. 928, 100 S.Ct. 3027, 68 L.Ed.2d 1123 (1980).

■ Here, after conducting a thorough evidentiary hearing, the state trial judge found that neither the photo procedures nor the lineup procedures were suggestive and that Kaggen had an adequate view of Sales' face during the robbery. Accordingly, he allowed the prosecutor to introduce testimony concerning Kaggen's corporeal identification of Sales at the pretrial lineup and also permitted an in-court identification. Given petitioner's full and fair opportunity to litigate this claim in the state courts, the state trial court's ruling and underlying findings are presumptively correct and can only be overturned by a federal habeas court if the petitioner can demonstrate that they are not "fairly supported by the record." 28 U.S.C. § 2254(d)(8). *See Smith v. Phillips*, —— U.S. ——, ——, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982); *McNary v. Sowders*, 660 F.2d 703 (6th Cir. 1981). Our review of the state court hearing transcript

indicates the petitioner has failed to show that the trial judge's ruling was not fairly supported.

■ Nothing in the record indicates that the viewing of photographs by Kaggen was suggestive. Kaggen was shown between 16 and 24 photos, she was not told that she had to choose any one of them, and no improper statements were made to her by the police officers. In light of the corroborated testimony that the photo array was comprised mostly of blacks, but also contained a few whites and hispanics, we do not draw an inference of suggestiveness from the failure of the police to preserve the photo array.[3]

■ As to the lineup, the only hint of suggestiveness emanated from the police officer's statement to Kaggen just prior to viewing the lineup that a suspect was in custody. Although this court has expressed disapproval of such a statement, *Styers v. Smith*, 659 F.2d at 297, the suggestiveness in this case was minimal since the statement preceded an otherwise acceptable lineup, rather than a one person showup. *Id.* Five black men were chosen for the lineup and Kaggen was not told whom to pick. As to the temporal proximity of the photo viewing to the lineup, regardless of whether the photo spread preceded the lineup by 24 hours, as Detective Taylor testified, or by ten weeks, as Kaggen testified, it is unlikely that the lineup was tainted since the prior photo procedures had not been suggestive.

■ There has been no showing that the lineup and photo procedures were conducted in a suggestive manner such as would render fatally unreliable (and thus inadmissible) the in-court identification or lineup testimony. Consideration of the five *Manson* factors further supports this conclusion. The state trial judge found at the pretrial hearing, and the record supports, that Kaggen had an ample opportunity to view Sales

---

**3.** Of course, the preferred procedure would have been to preserve the array. *See, e.g., United States v. Williams*, 575 F.2d 388, 393 (2nd Cir.), *cert. denied*, 439 U.S. 842, 99 S.Ct. 134, 58 L.Ed.2d 141 (1978). To the extent that

*Branch v. Estelle*, 631 F.2d 1229, 1234 (5th Cir. 1980), adopts a conclusive presumption of suggestiveness from the failure of the police to preserve the photo array, we decline to follow it.

and to see him clearly and fully at very close range under excellent light for two to three minutes while facing him at various points without obstructions. It is not at all unreasonable to conclude that she paid close attention to Sales, especially since he was giving her directions and brandishing a gun. Kaggen did not describe the assailant after the crime.[4] The evidence showed that Kaggen identified Sales with certainty when viewing the photo array, at the lineup, and at trial. Finally, even though the first corporeal confrontation between Kaggen and Sales did not take place until more than two months after the crime, such a delay does not itself render the identification so unreliable as to be inadmissible. *See United States v. Williams,* 596 F.2d 44, 49 (2nd Cir.), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2893, 61 L.Ed.2d 317 (1979) (identification testimony admissible despite lapse of 32 months between crime and confrontation).

In sum, the trial court's admission of the in-court identification and lineup testimony did not deprive appellant of due process.

### III.

### A.

As discussed above, the Supreme Court in *Manson,* 432 U.S. at 116, 97 S.Ct. at 2253, ruled that identification evidence which meets a minimum threshold level of reliability (i.e., an absence of "a very substantial likelihood of irreparable misidentification") was to be weighed by the jury. The Court stated:

> We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

*Id.* The role of the jury in weighing identification evidence was recently stressed in *Watkins v. Sowders,* 449 U.S. at 347–48, 101 S.Ct. at 658–59, in which the Court ruled that the Due Process Clause of the Fourteenth Amendment did not in all cases require a pretrial hearing concerning the admissibility of identification evidence. The Court's emphasis on the truth finding function of cross-examination concerning "identity issues", *id.* at 348, 101 S.Ct. at 659, presupposes the preeminent role of the jury in assessing identification evidence. The important role of the jury in assessing suggestiveness as it bears on the reliability of identification evidence had been earlier recognized in *Simmons v. United States,* 390 U.S. at 384, 88 S.Ct. at 971, in which the Court stated, "[t]he danger that use of [a pretrial photo identification] technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." *See United States ex rel. Pella v. Reid,* 527 F.2d 380, 385 (2nd Cir. 1975).

In the present case, the trial judge instructed the jury that the witness' identification of the defendant was a question of fact to be decided in light of all the testimony, that reliability was the most important factor to consider in assessing the value to be given the witness' identification testimony, and that the jury should consider all the circumstances of the initial identification, including the witness' opportunity to observe the defendant, the lighting conditions, and the witness' power of observation. The trial judge then instructed, over appellant's prior objection: "The photo procedures followed in relation to the identification were not suggestive as a matter of law and may not be considered by you in your deliberation."[5]

---

4. The trial judge ruled that Kaggen's identification testimony was admissible after he had considered all the evidence presented at the *Wade.* Nothing presented at that proceeding indicated that Kaggen had been asked to describe the robber immediately after the crime. At trial, Kaggen testified that she had been asked to, but did not, describe the robber after the crime. Police Officer Walsh, one of the officers who went to the scene, did not recall asking Kaggen to describe the robber.

5. The trial judge's full instruction regarding the identification issue stated:

■ Although we are mindful of the Supreme Court's admonition that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge," *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *see Nelson v. Scully*, 672 F.2d 266, 271 (2nd Cir. 1982), the foregoing single instruction clearly and unequivocally took from the jury the questions of whether the photo array viewed by Kaggen was suggestive and whether it adversely affected the reliability of her subsequent identifications of Sales at the lineup and the trial. The Supreme Court opinions cited *supra* indicate that due process requires that the jury be permitted to consider and balance all factors relevant to their ultimate determination of the reliability and weight to be given identification evidence. Since the trial court's instruction removed one of those factors from the jury's consideration, we find that this instruction was erroneous.

■ Related to his attack on the jury charge, Sales for the first time claims that the trial judge erred in not permitting his counsel to examine Detective Taylor at trial with regard to the photographs he showed to Kaggen. Sales contends the trial judge's

> You've heard the expression identification used. Now identification is a question of fact for you to decide in the light of all the testimony. Under our law, the identification of an accused by a solitary witness as the one involved in the commission of a crime is in of itself sufficient to justify a conviction of such person provided of course you are satisfied beyond a reasonable doubt of the identity of the accused as one who committed the crime. In making your determination as to his identification, you should take into consideration all the facts and circumstances which existed at the time of the observation of the witness. The identification should be most carefully scrutinized.
>
> In determining the force and value of the testimony tending to establish the identity of the defendant as the person who committed the crime charged against him, the reliability of the testimony of the witness is the most important factor for your consideration. It is for you to say how such testimony impresses you and how much faith you can give it. You know from your own social and business activities that we often meet people under circumstances where no impression or recollection of those persons is left with us. On the other hand, the circumstances may be such that a clear and indelible picture of the person we have met is left on the mind.

ruling deprived him of his Fourteenth Amendment due process rights and violated his Sixth Amendment rights of confrontation and compulsory process. This claim was not raised in the district court and therefore may not be considered by this court. *Alexander v. Smith*, 582 F.2d 212, 217–18 (2nd Cir.), *cert. denied*, 439 U.S. 990, 99 S.Ct. 589, 58 L.Ed.2d 664 (1978); *United States ex rel. Robinson v. Vincent*, 506 F.2d 923, 924 (2nd Cir. 1974), *cert. denied*, 421 U.S. 969, 95 S.Ct. 1962, 44 L.Ed.2d 458 (1975).[6]

**B.**

The erroneous instruction to the jury does not require automatic reversal of the conviction. Rather, a constitutional error of this type may be held harmless if the reviewing court is "able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). *See Klein v. Harris*, 667 F.2d 274, 289–91 (2nd Cir. 1981). In making this determination, we must consider the gravity of the errors in relation to "the totality of the proof offered against appellant." *Hendrix v. Smith*, 639 F.2d 113, 115 (2nd Cir. 1981).

> The identification of the defendant as the person who committed the crime must be shown with sufficient certainty as to preclude a reasonable possibility of mistake. Consider whether or not the witness had sufficient time to observe the defendant on the day and time in question. Consider the physical factors existing at the time such as lighting conditions. Take into consideration the witness's power of observation and consider all of their testimony, all of her testimony with respect to the opportunity she had to form in her mind a clear and convincing picture of the person who she claims committed the crime.
>
> The photo procedures followed in relation to the identification were not suggestive as a matter of law and may not be considered by you in your deliberations.

6. In addition, this claim was not raised in the state appellate courts and was not the subject of a state petition by Sales for post-conviction relief. Thus, even if raised in the federal district court, Sales' claim would be barred by his failure to exhaust his state court remedies. Since this claim was never raised in his habeas corpus petition, however, this failure to exhaust did not bar the district court's review of Sales' other claims. *See Rose v. Lundy*, —— U.S. — ·, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

At the outset, we recognize that Kaggen's identification testimony was the linchpin in the prosecutor's case; it was the sole evidence directly linking Sales to the robbery. As discussed below, however, the importance of Kaggen's identification testimony does not, in and of itself, preclude our finding that the trial judge's erroneous instruction was harmless error.

Under the trial judge's charge, the jury was free to consider several factors bearing on the reliability of Kaggen's identification of Sales: first, the jury was instructed to consider Kaggen's opportunity to view the defendant at the time of the robbery; second, the jury could consider the circumstances of the lineup; third, the jury was free to consider the temporal proximity of the photo spread to the lineup and the possibility that the photo chosen by Kaggen at the photo spread was "etched" into her mind and affected her judgment at the lineup; and fourth, the jury could assess the degree of certainty with which Kaggen identified Sales in the courtroom. Finally, with respect to Kaggen's general credibility, the jury was free to consider the discrepancy between her testimony and Detective Taylor's testimony concerning the date of the photo spread. Of course, the jury was instructed to consider other elements of credibility, such as Kaggen's demeanor on the witness stand and her motive to testify falsely.

Evidence related to all of the foregoing factors was developed at trial, both during direct examination and during vigorous cross-examination of Kaggen. The import of these factors was also argued to the jury in closing arguments. Upon consideration of these various factors, in light of all the evidence, the jury chose to convict Sales.

In the absence of the trial judge's erroneous instruction, the trial would have differed in a single respect. The jury would have been free to consider whether the composition of the photo spread was suggestive and whether improper remarks were made to Kaggen during the photo spread. As previously discussed, the evidence adduced at the *Wade* hearing and Kaggen's pertinent trial testimony indicated that the photo spread was fairly comprised of photographs of blacks and a few whites and hispanics. The evidence also showed that the officers who conducted the array made no suggestive remarks to Kaggen. On this record, we conclude that it is highly unlikely that the jury's verdict would have been altered by its consideration of the procedures utilized at the photo spread. Indeed, consideration of the photo procedures may have further buttressed Kaggen's identification testimony which, given its return of a verdict of guilty, the jury must have found reliable.

Accordingly, we find that the trial judge's error was harmless beyond a reasonable doubt. Stated differently, we find beyond a reasonable doubt that the jury would have convicted Sales in the absence of the trial judge's erroneous instruction.

## IV.

Appellant's claim that statements in the prosecutor's summation were improper and impermissibly bolstered Kaggen's credibility need not detain us for long. In *Donnelly v. DeChristoforo*, 416 U.S. 637, 647–48, 94 S.Ct. at 1868, 1873, 40 L.Ed.2d 431 (1974), the Supreme Court instructed federal courts reviewing habeas claims premised upon prosecutorial misstatements in summation to distinguish between "ordinary trial error of a prosecutor and that sort of egregious misconduct ... [which] amount[s] to a denial of constitutional due process." The Court stressed that federal appellate courts do not exercise the same supervisory powers over state criminal courts as they do over federal district courts.[7] *Id.* at 642, 94 S.Ct. at 1871. *See Smith v. Phillips*, —— U.S. at ——, 102 S.Ct. at 948. Although the prosecutor argued that Kaggen was a credible witness, he did not personally vouch for her credibility. While two of the prosecutor's remarks may have been considered somewhat in-

---

7. Accordingly, appellant's reliance upon cases such as *United States v. Modica*, 663 F.2d 1173, 1178–86 (2nd Cir. 1981), *cert. filed*, 50 U.S.L.W. 3743 (U.S. March 1, 1982) is misplaced.

**542**

flammatory, the closing argument as a whole did not approach the level described in *Donnelly, supra,* and did not deprive appellant of a fair trial.[8]

As to the two claims raised in Sales' pro se brief, Judge Sand correctly ruled that appellant forfeited these claims by failing to raise them on his direct state court appeal. Failure to raise an issue in state court on appeal constitutes a bar to federal habeas corpus relief, absent a showing of cause for the failure to present the issue and actual prejudice resulting from the failure to raise the issue. *Forman v. Smith,* 633 F.2d 634, 640 (2nd Cir. 1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1981). Sales, who was represented by counsel in his state court appeal, has presented no good cause for his failure to raise on direct appeal the claims of unconstitutional arrest and wrongfully withheld exculpatory material. Accordingly, appellant is not entitled to review of those claims in this federal habeas corpus proceeding.

Affirmed.

8. The alleged prosecutorial misstatements do not alter our previous finding that the state trial judge's error was harmless beyond a reasonable doubt.