Timothy FLETCHER, Petitioner,

v.

Louis F. MANN, Respondent.

No. 96–CV–164 (FJS) (RWS).

United States District Court,
N.D. New York.

Feb. 4, 1997.

Timothy Fletcher, Wallkill, NY, pro se.

Office of the Attorney General, State of New York, Department of Law, Albany, NY (Keith E. Kammerer, Asst. Atty. Gen., of counsel), for Respondent.

## MEMORANDUM DECISION AND ORDER

SCULLIN, District Judge:

Presently before this Court is petitioner Timothy Fletcher's *pro se* petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254.

Petitioner is currently incarcerated at the Shawangunk Correctional Facility in Wallkill, New York, a state prison facility. In his petition for a writ of habeas corpus, petitioner alleges: (1) the prosecution failed to provide notice of grand jury proceedings as required by statute, and thus he was denied the opportunity to testify; (2) identification procedures violated his statutory and constitutional rights; (3) he was illegally sentenced as a persistent felony offender; (4) he was denied the effective assistance of trial counsel due to a conflict of interest; (5) he was denied due process of law by the prosecutor's improper conduct during summation; (6) he was denied due process of law by the conduct of the trial court; (7) he was denied a fair trial by the court, prosecutor and defense counsel; and, (8) he was denied the effective assistance of appellate counsel. The Court will consider these claims *seriatim.*

## BACKGROUND

In August of 1988, petitioner participated in an uprising at Coxsackie Correctional Facility in which 32 inmates took control of the "special housing unit" and held five corrections officers hostage for 14 hours. As a consequence, petitioner was indicted on 13 counts for various crimes. After a trial, petitioner was acquitted on seven counts and convicted on the remaining six, which included two counts of promoting prison contraband in the first degree, two counts of criminal possession of a weapon in the third degree, one count of promoting prison contraband in the second degree, and one count of menacing.

Petitioner was treated as a persistent felon and sentenced to concurrent prison terms of 15 years to life for the four felony convictions

and concurrent terms of one year for promoting prison contraband in the second degree and six months for menacing.

Petitioner appealed the judgment of conviction to the Appellate Division, Third Department. Before the Appellate Division he argued: (1) he was not notified of grand jury proceedings; (2) his identification should have been suppressed; (3) the persistent felony offender finding was illegal; (4) he was denied effective assistance of trial counsel; and, (5) he was denied a fair trial. The Appellate Division affirmed the conviction on December 26, 1991. *People v. Fletcher,* 178 A.D.2d 776, 578 N.Y.S.2d 266 (3d Dep't 1991), *leave to appeal denied,* 79 N.Y.2d 1000, 584 N.Y.S.2d 455, 594 N.E.2d 949 (1992).

Petitioner moved to vacate the judgment in Greene County Court, claiming, *inter alia,* that he was denied effective assistance of counsel due to a conflict of interest, that the prosecutor engaged in improper conduct during summation, and that he was illegally sentenced as a persistent felon. The motion was denied by Decision dated January 28, 1993. Permission to appeal to the Appellate Division, Third Department, was denied by Order dated March 31, 1993. Petitioner's application for permission to appeal to the New York Court of Appeals was denied by Order dated June 10, 1993.

Petitioner made an application to the Appellate Division, Third Department, for a writ of error *coram nobis* on the ground of ineffective assistance of counsel on his direct appeal. This application was denied on April 14, 1994, and petitioner's subsequent application for permission to appeal to the New York Court of Appeals was dismissed.

Petitioner filed this petition for a writ of habeas corpus on September 25, 1995.

## DISCUSSION

*I. State Procedural Defaults*

■ With respect to petitioner's first and fifth claims, this Court is procedurally barred from hearing them. 28 U.S.C. § 2254(a) provides:

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.*

(Emphasis added.) Federal courts will not review state court decisions which rest on "independent and adequate state grounds." *Coleman v. Thompson,* 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991). Procedural default under state law constitutes an independent and adequate state ground. *See id.* at 729–30, 111 S.Ct. at 2553–54.

■ Petitioner's first claim is that New York law entitled him to notice from the prosecution of his right under state law to testify before the grand jury. There is an independent and adequate state ground for refusing to address this claim. Under N.Y.Crim.Proc. § 190.50(5)(c), petitioner was required to challenge a violation of the notice requirement within five days after his arraignment. As the Appellate Division explained, "[petitioner] failed to assert his claim of lack of notice of the Grand Jury proceedings until June 27, 1989, five months after his January 10, 1989 arraignment on the indictment and, therefore, his motion was untimely." *People v. Fletcher,* 178 A.D.2d at 777, 578 N.Y.S.2d 266.

■ With respect to petitioner's fifth claim, prosecutorial misconduct, this too is barred by the doctrine of independent and adequate state grounds. This claim was first raised in the state court upon petitioner's motion to vacate the judgment of conviction before the county court. The county court held that, because petitioner failed to present this argument on direct appeal despite the fact that the full record was available, it could not grant relief on a motion for collateral review. *People v. Fletcher,* No. C–88–148, Decision at 1–2 (Greene County Ct. Jan. 28, 1993). Failure to bring claims available on the record for appeal is a "procedural default under state law," and therefore constitutes an independent and adequate state ground. *Arce v. Smith,* 889 F.2d 1271, 1273 (2d Cir.1989).

Exceptions exist to the rule that state procedural default bars federal habeas review where, for example, the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. at 2565. However, the petitioner's first and fifth claims raise no such concerns. Therefore, the Court finds that these claims lack merit.

## II. Identification Procedures

Petitioner's second claim is that the identification procedures used by the police were unduly suggestive, such that subsequent in-court identifications by hostages and negotiators should have been suppressed. More particularly, petitioner claims that the use of a photo array for identification purposes was unduly suggestive to witnesses.

■ The Fourteenth Amendment requires exclusion of identification evidence which is so unreliable as to create "a very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977) (quotation omitted). Thus, this Court must ask two questions: first, whether the procedure was unduly suggestive; and if so, then second, whether the identification nonetheless possesses sufficient indicia of reliability, such that it should be admitted. *See Styers v. Smith,* 659 F.2d 293, 297 (2d Cir.1981); *see also Manson,* 432 U.S. at 106, 97 S.Ct. at 2249. Thus, if the identification is clearly independently reliable, no amount of undue suggestion will serve to suppress it. *See Styers,* 659 F.2d at 297.

■ Here, the state trial court held a suppression hearing on this issue and found that of the two hostages and five negotiators who made in-court identifications of petitioner, four had prior familiarity with petitioner, and thus the photographs merely confirmed his identity. Of the remaining three witnesses, the court found that they each had an independent basis for identification because each had acted as a negotiator throughout the 14-hour incident. At any rate, the court found

the use of photographs not unduly suggestive and denied the motion to suppress.

It is amply apparent that the in-court identifications by the seven witnesses were clearly reliable. These witnesses each had independent bases for their identifications. Thus, even if the procedures were suggestive, the identifications should not be suppressed, as they cannot be said to have produced "a very substantial likelihood of irreparable misidentification." *Manson,* 432 U.S. at 116, 97 S.Ct. at 2254 (quotation omitted). Therefore, the Court finds that petitioner's second claim also lacks merit.

## III. Persistent Felony Offender

Petitioner's third claim is that the finding that he should be sentenced as a persistent felony offender violated the Due Process Clause of the Fourteenth Amendment. In particular, petitioner claims that the notice he received did not satisfy the requirements of N.Y.Crim.Proc. § 400.20, that the finding was unsupported by the evidence, and that he was not given an opportunity to challenge the constitutionality of one of his prior felonies.

■ Petitioner claims that the state court, in notifying him of the prosecution's request that petitioner be sentenced as a persistent felony offender, failed to specify his former felonies and the factors the prosecution intended to prove to render the classification appropriate, as required by N.Y.Crim.Proc. § 400.20(3). The letter which was sent to petitioner made clear that the court would rely on "[petitioner's] character ... by use of his disciplinary record while incarcerated" and by use of witnesses. Petitioner contends that the court was not specific enough in listing the exact factors on which it would rely. Petitioner also claims that the letter did not include a copy of his disciplinary record.

The letter from the court made clear the nature of the evidence to be adduced at the hearing, and put petitioner amply on notice. While the disciplinary record was not attached, petitioner and his counsel had copies of all of petitioner's records, disciplinary and otherwise, which they had obtained during

the trial. Even if this Court agreed with petitioner that the notice to him did not meet the precise requirements of section 400.20(3), any error in this regard was harmless. The error cannot be said to have "had a substantial and injurious effect or influence" on the outcome of the persistent felon hearing. *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

As to the sufficiency of the evidence, Petitioner's counsel admitted that he had prior felony convictions, and made only abortive attempts to challenge one of them.[1] Over twenty witnesses testified at the hearing as to petitioner's history and character, showing petitioner to be hostile, assaultive and unruly both in and out of prison. Petitioner argues that this evidence only shows that he "acted out" in prison, and not that he was violent.

Petitioner claims that he was denied his constitutional opportunity to challenge the constitutionality of his prior felony convictions. A hearing commenced on February 14, 1990, to determine whether petitioner was eligible for persistent felony offender status. This hearing was in no way deficient. The transcript from this hearing and the circumstances surrounding it belie petitioner's arguments on this issue. Petitioner's counsel at the hearing complained that he was unprepared to proceed because he had not had the opportunity to review the prior felonies, and particularly because petitioner had not been able to provide him with any potential witnesses or evidence to use in petitioner's defense. While petitioner's counsel admitted that he had been notified of the hearing on January 11, 1990, he stated that his letter to petitioner requesting petitioner's help in gathering evidence had not been received by petitioner. Petitioner also contended that he had not received any notice from the court regarding the hearing.

To the contrary, the record shows that the court sent petitioner notification and petitioner's counsel sent petitioner a request for assistance with evidence, but that petitioner refused to sign for legal mail on the dates those letters would have been received. This Court will not permit petitioner to benefit by his willful avoidance of legal mail. The record indicates that notice was duly sent to petitioner by ordinary mail, but that petitioner refused to accept it. Petitioner's arguments as to the constitutionality of his opportunity to challenge the evidence are based in his own willful avoidance, and therefore must be rejected.

## IV. Ineffective Assistance of Counsel

Petitioner's fourth and eighth claims are denial of effective assistance of trial and appellate counsel, respectively. In order to establish a claim of ineffective assistance of counsel, "a claimant must show both (1) that his attorney's performance fell below an 'objective standard of reasonableness,' and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Kieser v. New York,* 56 F.3d 16, 18 (2d Cir.1995) (quoting *Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984)). The *Strickland* test applies to both trial and appellate counsel. *See Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.), *cert. denied,* 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994).

As regards his trial counsel, petitioner claims that his attorney has a conflict of interest because he was also representing eleven of petitioner's co-defendants. This claim is meritless. "It is well established that the Sixth Amendment right to effective assistance of counsel carries with it a correlative right to representation that is free from conflicts of interest." *Strouse v. Leonardo,* 928 F.2d 548, 552 (2d Cir.1991) (quotation omitted). The Supreme Court has "articulated the standard for assessing ineffective assistance of counsel claims based on conflict of interest: 'In order to demonstrate a violation of his Sixth Amendment rights,' a defendant

---

1. The one challenge briefly raised was to a felony conviction which petitioner contended should be disregarded because he was sentenced as a youthful offender. Petitioner did not much pursue this argument, and at any rate, it is unsupported by N.Y. Penal Law § 70.10.

must establish that an actual conflict of interest adversely affected his lawyer's performance." *Id.* (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980)). Petitioner has failed to allege a concrete conflict or any prejudice to his defense, both of which are required to succeed on his claim.[2] *See, e.g., Cuyler,* 446 U.S. at 348, 100 S.Ct. at 1718; *Winkler v. Keane,* 7 F.3d 304, 307 (2d Cir.1993).

 Petitioner also argues that he was denied effective assistance of appellate counsel. Petitioner appears to argue that while his appellate counsel argued that petitioner did not receive adequate notice of his right to testify before the grand jury, he maintains that appellate counsel did not argue effectively enough. This claim is spurious because as a prison inmate he had no right to notice of grand jury proceedings under N.Y.Crim.Proc. § 190.50(5)(a). Further, petitioner claims that appellate counsel should have alleged prosecutorial conduct, despite the fact that this claim was not preserved below by trial counsel. Failure to bring even a meritorious claim will rarely constitute ineffective assistance of counsel, *see Murray v. Carrier,* 477 U.S. 478, 486–87, 106 S.Ct. 2639, 2644–45, 91 L.Ed.2d 397 (1986), so counsel's failure to bring meritless claims in this case is clearly not ineffective assistance of counsel. Rather, it is the "hallmark of effective appellate advocacy" to choose wisely which claims are brought on appeal. *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986).

*V. Trial Court's and Prosecution's Misconduct*

 Petitioner's fifth, sixth, and seventh claims involve alleged trial errors committed principally by the court and prosecution. Petitioner's fifth claim is that he was denied his right to a fair trial by the prosecution's conduct during summation. Petitioner's sixth claim is that he was denied due process by the trial court's misconduct. Petitioner's

seventh claim is that he was denied a fair trial by the combined misdeeds of prosecution, defense and court. It is well settled that habeas relief will not be granted on constitutional trial errors unless it had a "substantial and injurious effect or influence" on the jury's verdict. *Brecht,* 507 U.S. at 637, 113 S.Ct. at 1722 (quoting *Kotteakos,* 328 U.S. at 776, 66 S.Ct. at 1253).

Petitioner fails in these several claims to allege misconduct which is substantial enough to amount to a denial of due process. Petitioner's claim of prosecutorial misconduct seems to stem from conduct in the prosecution's summation which suggested that petitioner had lied and which demonstrated the violence of a blow from a police baton. Even in petitioner's retelling, this conduct does not amount to misconduct, but at its worst is overstating the case, and more likely is simple advocacy. These statements cannot be said to have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quotation omitted).

Petitioner next complains that the trial court cast doubt on the testimony of a witness which, according to petitioner, was favorable to his case, when the court stated to the jury: "I should indicate to you now on this witness that this is part of the stuff that we have been going over." Petitioner fails in any way to explain how this comment prejudiced his case, or for that matter diminished the value of the witness's testimony.

Petitioner also complains that the trial court violated due process by introducing evidence of a prior statement in order to bolster the testimony of a witness for the prosecution. Although it is unclear, petitioner appears to be referring to a document regarding prior photo identifications of petitioner by the witness. Even if this did constitute an erroneous evidentiary ruling, this

---

2. The only alleged prejudice petitioner specifies is that his counsel failed to call certain co-defendants as witnesses, because he would have had to advise them, as their lawyer, to take the Fifth Amendment right to abstain from testifying. However, petitioner fails to show that there would have been any testimony beneficial to his case, or even that any other attorney representing the co-defendants would not have advised them to take the Fifth. Thus, this allegation is wholly lacking.

174

would hardly rise to the level of a denial of due process. The writ will issue on an erroneous evidentiary ruling "*only* where petitioner can show that the error deprived her of a *fundamentally fair* trial." *Taylor v. Curry,* 708 F.2d 886, 891 (2d Cir.1983). The "bolstering" of which petitioner complains occurred during the identification hearing, and evidence of petitioner's identification was overwhelming. Any error was subsumed in what was overall a fair and well-run trial. *See id.* ("'fundamental fairness'" is determined in the context of the entire record).

In all, petitioner alleges a great many failures of the court, prosecution and defense. None of the allegations appears to this Court to be anything more than an isolation and mischaracterization of some event or statement in the course of a complex trial. In sum, this Court fails to find anything in petitioner's claim which rises to the level of a denial of due process.

### CONCLUSION

This Court has reviewed all of petitioner's claims and finds them to be without merit. For the foregoing reasons, this petition for a writ of habeas corpus is DENIED.

**IT IS SO ORDERED.**